### KNOBELOCK v. GERMANIA SAVINGS BANK.

1. ISSUES—PRACTICE—EQUITY.—In issues submitted out of chancery, the findings of fact by the jury are final, unless set aside by Judge.
2. IBID.—EXCEPTIONS.—Where findings of fact by a jury upon issues are not set aside, exceptions that the Judge did not find facts inconsistent with such findings are untenable.
3. CHARGE—PRINCIPAL AND AGENT—BANKS.—This request is defective, because it did not distinguish between acts of the agent in his official capacity for the bank and as a depositor of the bank.
4. PRINCIPAL AND AGENT—BANKS—TRUSTEE.—If an officer of a bank, having money on deposit there as trustee, acts ostensibly in the capacity of trustee, but secretly for himself, he did not in such transaction represent the bank.
5. CHARGE.—A Judge is not bound to charge an ambiguous request, or one inapplicable to the facts of the case.
6. IBID.—APPEAL.—The modification of an erroneous request, which frees it from some of its faults, is not reversible error at the instance of the party preferring it, even though as modified it be faulty.
7. PRINCIPAL AND AGENT—NOTICE.—Knowledge of an agent while engaged in a fraud for his own benefit, in which the principal is not in any way a participant, cannot be imputed to the principal. Cases considered.

Before BENET, J., Charleston, May, 1896.    Affirmed.

Action by Jacob Knobelock, trustee, against Germania Savings Bank, Jacob Knobelock, administrator of William Knobelock, sr., and as executor of John Knobelock, and individually; Fredericka Ostendorf, administratrix of Susan Knobelock; Eliza G. Knobelock, executrix of Wm. Knobelock, jr., and Geo. A. Wagner, administrator of Jacob Small. So much of the charge as bears upon the main issues is as follows:

We come now to the second question: Did the said bank at the time the said money was drawn out have notice that the said Jacob Small was drawing the same with the intent and for the purpose of misappropriating and converting the same to his own use? I may say here that if you find no, in answer to the first question, which would mean that the

plaintiff had failed to show or prove the fraudulent intent of Small, there would then be no need to consider the second question; but if your finding on the first question of fact should be yes, meaning thereby that the plaintiff had satisfied you by the greater weight of the testimony of Small's fraudulent intent, then you will proceed to consider and decide the second question; as the burden of the first question was the intent and purpose, so the burden of the second question is the notice to the bank, notice of the fraudulent intent and purpose of Small. In other words, did the bank know or have reasonable ground for knowing that Small intended and purposed to misappropriate and convert the money to his own use? If it did not actually or constructively know that such was his intent and purpose, was the act of Small committed under such circumstances as should reasonably have put the bank on inquiry, and would such inquiry, if pursued, have reasonably led to such information as would have made it the duty of the bank to have prevented the drawing out of the money by Small? You have heard a great deal of interesting and instructive discussion about the law of notice, and about the law of principal and agent, showing how and to what extent the knowledge of an agent is to be imputed to his principal so as to affect him with notice. This was intended to show how and to what extent the knowledge of Jacob Small, as an officer of the bank, its president and director, was to be imputed to his principal, the corporation, the bank of which he was president and director, the Germania Savings Bank of Charleston, S. C., and thus to ascertain how far, if at all, the bank was to be held liable for the acts of Jacob Small, its officer. I shall endeavor to outline now as plainly and in as few words as possible the law on this issue, which law you will apply to the testimony you have heard. A bank is a corporation, and as such it is an intangible body, and can act and be acted upon only by means of agents or officers. Whatever its agent or officer does within the scope of his agency or official duty is the act of the bank, and the bank

is bound by it and is responsible for the consequences of that act. You will remark, however, that the act, the overt act, of an officer or agent will bind the bank, but only such an act as is within his province as agent, and within the lines of his duty as such officer. If it is the duty of an officer of the bank to cash checks or discount bills, any cashing or discounting of a bill by such officer when acting for the bank, or ostensibly acting for the bank, will bind the bank without any special authorization, because such act would be within the scope of his agency or official duty. But if such officer should dabble in land or cotton speculation, even though ostensibly acting for the bank, the bank would not be bound by such act of his unless the bank had given him special authority so to act, because such business is not within the scope of his official duty or of his agency. Under the law of notice, not only is the bank bound by and held liable for the acts of its agent done in the line of his duty as such, but the bank is held chargeable with the knowledge of its agent or officer when he is acting for the bank and representing the bank in any transaction. This is only an application of the maxim of the law, and is grounded on the presumption that an agent or officer will communicate to his principal or to the corporation any knowledge he may possess which may affect the transaction in which he is representing his principal or the corporation. It is his duty so to do, and the law presumes that he will do his duty, and this is the law, no matter whether the knowledge is obtained in the course of his official duties or as a private individual, if he be acting for the corporation officially or as its agent in a matter of business for the corporation. But to this rule of law, as to all rules, there are some exceptions. Thus, where an agent or officer could not communicate his knowledge without a breach of official confidence—as, for instance, should that agent be an attorney at law, and as such had obtained from his client confidential communications. It is not to be presumed that he would communicate such information. Under the law he cannot.

So, also, where an agent or officer is about to commit a fraud, it is not to be presumed that he will divulge the guilty fact to his principal or to his colleagues.    In such cases of fraud the general presumption that the agent will communicate his knowledge to his principal is displaced by the stronger special presumption that he will not do what would effectually defeat his purpose; but this counter-presumption will not avail where an agent or officer acting, or ostensibly acting, in behalf of his principal or corporation commits a fraud upon a third person, and not upon his principal or corporation; in such a case the principal or corporation will be held chargeable with the guilty knowledge of the agent or officer, that is to say, if he is acting in behalf of the corporation and representing it in the transaction.    For example: Should a bank president, acting officially and representing the bank in the transaction, commit a breach of trust or perpetrate a fraud upon a third person, the knowledge of that officer that his act is fraudulent, and his purpose is fraudulent and a breach of trust, will be imputed to the bank, and the bank would be properly considered a party to the fraud, and held liable to the injured person for his loss.    But the rule is different when the agent or officer is dealing with the bank or corporation in the particular transaction in his own behalf and not as such agent or officer.    When acting independently on his own behalf, even though an officer of the bank, his position is hostile to the bank or corporation, he stands in the attitude of a stranger who is dealing at arms' length with the bank or corporation.    Hence this other exception to the general rule, that when an agent or officer is acting for himself and not for his bank or corporation in transacting business with the bank or corporation in the same way that any other person might do, the law will not impute to the bank or corporation any knowledge of his relation to the matter in hand.    In such case the agent's interest is opposed to the bank or corporation, and the presumption will be, not that he will communicate his knowledge, but that he will conceal it.

I shall now take up the requests to charge submitted by the plaintiff and defendant, and before I get through with them, either affirming or modifying or rejecting the requests, I shall have given you, I trust, enough law to guide you in discussing the questions of fact before you. The following are the plaintiff's requests to charge:

1. "The question of imputing to a bank a fraud committed by its agent in the discharge of his duty as an officer of the bank is to be passed upon by the jury." That is the law. It is a question for the jury, but the jury ought to decide the question upon the testimony in the case, and under such principles of law as it is the duty of the Court to lay down for their guidance.

2. "The duty of a president of a bank of general supervision is more general than that of any other member of the board of directors." This is a statement of what is generally the case, and as a general statement it is the law.

3. "If a party dealing with an executor has at the time reasonable ground for believing that he intends misapplying the money, or is in the very transaction applying it to his own private use, the party so dealing is responsible to the person injured." That is the law. For example: If an executor having in trust as part of the assets of his testator's estate certain certificates of stock or securities, and he hypothecates and pledges such certificates of stock for the purpose of raising money for his own private use, or money which there is reasonable ground for believing that he intends misappropriating or misapplying, should the *cestui que trust* in that case suffer loss through such a transaction, the party through whom the executor thus dealt would be held liable. Such is the law, and you will apply it to the facts in this case if the facts be such that you can apply it. There can be no doubt that if Jacob Small had taken some of those securities and pledged them to the bank, and raised on them money for his own private use, and if by that transaction the estate to which those securities belong suffered loss, the bank would be responsible to the amount of that loss, be-

cause in dealing with an executor one has to be very careful, and if he has reasonable grounds for believing that the executor intends to misapply the money thus being raised and applying it to his own use, then the loss would fall upon the person thus dealing with him. But that law was laid down not as a general proposition, but in connection with the facts of a particular case, in which an officer who was also executor had so dealt with certain certificates of corporate stock as to put the party, the bank with whom he was dealing, properly on inquiry.

4. "A deposit in a savings bank is a bank matter, a part of its business, and all dealings of the bank concerning such deposit are concerning the business of the bank." Certainly, to that extent it is true, and I so charge you.

5. "Knowledge brought home to the agent of a corporation possessing authority to act, and acting in the matter to which the notice relates, is the strongest case for charging a corporation with notice of matter known to its agent." I so charge you.

6. "If the jury believe that Jacob Small was president of defendant bank, and that he knew that the deposit in said bank standing in the name of Jacob Small and William Knobelock, executors of estate of William Knobelock, sr., belonged to the *cestui que trust* under the will of William Knobelock, sr., then when the said deposit was entered in the said bank and became subject to his general supervision as president of the bank, whenever the bank acted through him or with his knowledge in any transaction concerning the deposit, where that knowledge was material and applicable, such knowledge of Small concerning the deposit is the knowledge of the bank." That is the law which would govern in a transaction with regard to the deposit in which he, Jacob Small, may have acted as officer of the bank and as its agent, but not if he acted concerning the deposit as any other depositor may have done. So you will decide from the testimony in this case whether Jacob Small was acting as officer and agent of the bank in drawing out said

deposit, or was acting as a depositor, such deposit being subject to his checks as such depositor. And here I charge you that if Jacob Small and his coexecutor originally placed the money on deposit in the defendant bank, and if he was at the time he drew the money out acting as sole surviving executor and authorized to act as such, then the bank was reasonably bound to pay the check of Jacob Small to the extent of the deposit, and for any loss which the *cestui que trust* may have suffered by the misappropriation of the money by Jacob Small, the bank will not be liable in law, unless the bank as a bank was guilty of a breach of trust towards this *cestui que trust* under the will of William Knobelock, or acted in collusion with Jacob Small in a fraudulent plan and purpose to misappropriate the money on deposit, and that depends, of course, entirely upon the testimony, and is for you to decide.

7. "If the jury believe that Jacob Small was president of defendant bank at the times mentioned in the complaint, and that he drew from said bank at the periods therein stated the said amounts alleged to be and which were the property of the *cestuis que trustent* under the will of William Knobelock, sr., without the knowledge of said *cestuis que trustent*, and that at the times said deposits were so drawn, he, the president of the bank, was in the bank acting as its president with the general supervision of its affairs, including this deposit, knowing that the transaction was concerning said deposit, and then intended to misappropriate said amounts so drawn, and did in fact misappropriate them, then his knowledge of the same as a matter of law became the knowledge of the bank, and his receipt as executor cannot discharge the bank, if such receipt formed a part of the fraud." That is the law of this case. If the testimony satisfies you that Jacob Small in drawing the deposit was acting as president or officer or agent of the bank, representing the bank and acting for it, and not acting as depositor or as executor with a right to draw on the deposit. The knowledge of Jacob Small as an executor is not to be imputed to the bank

simply because he was president. It can be imputed to the bank and will bind the bank only with regard to transactions in which he acted as president or agent of the bank, acting in the business of the bank and in its behalf. To illustrate: Should the president of a bank who was also executor of an estate have on deposit in the bank a fund of money as executor, and should transfer that deposit from his account as executor to his own individual account, which he and the bank knew to be overdrawn, and should loss ensue to his *cestui que trust*, in such case the bank would be liable to the extent of the loss, because such a transaction would be acting, in part at least, as officer of the bank and in the business of the bank, and his knowledge would be chargeable to the bank, which would be held responsible to the extent to which it was benefited by the transaction, under the equitable doctrine that a principal cannot be allowed to reap the reward of the dishonesty of its agent. The law will not allow the principal to enjoy the fruit of its agent's fraud. If the principal shares in its agent's reward, it must also carry the burden of the agent's guilty knowledge.

8. "If Small never ostensibly in any of his transactions with the bank concerning this deposit held himself out to the bank as dealing with the deposit in any way as an individual, but on the contrary his professions and actions were that he was a fiduciary of the trust, and as such alone dealt with the bank, then as there was nothing to indicate to the bank that Small was dealing with it as an individual, the reason ceases for holding that when an officer of a corporation enters into a transaction with it for his individual benefit, he, in reference to that transaction, must be supposed to act at arms' length with the corporation. For the protection of third persons it must rather be presumed that the principal has authorized the agent to act with notice of the fraud." I cannot charge you that.

9. "If, on the lines heretofore charged, the jury believe that the bank, through Jacob Small, its president, knew that the fund in question was held by Jacob Small, surviv-

ing executor, for the *cestuis que trustent*, and that it was about to be misappropriated by Jacob Small, then it owed a high duty to the beneficiaries of the fund it held in its charge for them, and if this fund has been so misappropriated, the bank is liable." I refuse to charge you that. That would be to make the bank executor of the estate, devolving upon the bank all of the duties of the executor. That would run counter to what the Supreme Court has said, that the executor in this very case, Jacob Small, had the right to draw checks on that deposit fund, and those checks would be honored by the bank so long as there was money there. The only ground on which the bank could be held liable would be for some breach of trust, as I have explained to you. I cannot charge that proposition in its form.

10. (Insert plaintiff's requests to charge.) I so charge you.

11. (Insert plaintiff's 11th request to charge.) I charge you that, with this addition: *Provided*, That the testimony satisfies you as a jury that Small was acting officially for the bank in the transaction, and not acting as a depositor drawing on his deposit.

Defendant's requests to charge are as follows:

1. "That the jury cannot answer yes to the first question in the case unless they find that at the very time Small drew the money in question out of the bank, he had the intent and purpose to misappropriate and convert the same to his own use; the burden being on the plaintiff to establish this by evidence." That is the law.

2. "The burden is on plaintiff to show that the president had authority to pay deposits, if he claims such to be the case." I so charge you.

3. "That in drawing out the money in question, Small, even if president of the bank, was acting as a depositor, and any knowledge or intent he may have then had as to his disposition of the money was not notice to the bank, and could not affect it any more than similar intent or knowledge in the mind of any other depositor drawing money not communicated to the bank." I so charge you.

4. "That if Small was president of the bank when he drew the money in question out of the bank, and at that time had the intent to misappropriate and convert the money to his own use, the mere fact of his being such president would not be notice constructive or otherwise to the bank." I so charge you.

5. "That in drawing the money in question out of the bank, Small was acting adversely to the bank and not in its behalf, and if when drawing it he intended to misappropriate and convert it to his own use, notice of such his intent would not be imputed to the bank merely by reason of the fact that he was president of the bank at the time." I so charge you.

6. "That if at the time Small drew the money in question he had the intent to misappropriate and convert it to his own use, he was engaged in perpetrating an independent fraud on his own account, and the knowledge of his own intent could not be imputable or imputed to the bank, and would not be notice constructive or otherwise to it, merely because he was its president." I so charge you.

7. "That in order to charge a bank with notice of the facts of which its president or other officer has knowledge in reference to a transaction, he must have acted in the transaction on behalf of the bank." I so charge you, adding: "if he was acting either wholly or partially for the bank."

8. "That while the knowledge of an agent is ordinarily imputed and charged to his principal, there is an exception to this rule, in cases of such conduct on the agent's part as to raise a clear presumption that he would not communicate the fact in controversy; as when the agent acting nominally as such is in reality acting in his own or another's interest, and adversely to that of his principal, or when the communication of such fact would ordinarily prevent a consummation of a fraudulent scheme which the agent was engaged in perpetrating." I so charge you.

9. "That knowledge of an agent of a corporation or other principal while engaged in a fraud for his own benefit cannot be imputed to such corporation or other principal." I

add to that: "unless, also, the corporation or the principal is benefited by the fraud, in which case the corporation or other principal would be liable to the extent of its benefit received from the fraud."

(At this stage of Judge Benet's charge, Mr. Simons, for the defense, said: "May it please your Honor, we will not trouble you to read any more of our requests to charge, as we think you have covered the ground already.")

(By the Court:) So, gentlemen of the jury, by the kindness of counsel, we have been saved going over numerous and very carefully prepared requests to charge, which have been already substantially given to you in my general charge and my comments on the requests of the plaintiff. The Supreme Court has already held in this case that as surviving executor Small had the right to draw checks on any deposit he had as executor, and it was an implied duty of the bank to pay such checks, and that, therefore, the mere fact of drawing the money was not of itself illegal or wrong. If it was fraudulent, the taint of fraud came from the intent of Small; but even if the intent were fraudulent, even if Small knew at the time he drew the money that he was going to misappropriate it and convert it to his own use, that knowledge of his could not be imputed to the bank unless he was in that very transaction acting for the bank and representing the bank officially, and not acting as a depositor. If he was acting simply as any other depositor, the law will not impute to the bank any knowledge of his relating to the transaction in hand. If his interest in this transaction was adverse to the bank, there is no presumption that he would communicate his knowledge, guilty or otherwise, to the bank, but the reverse is the presumption. But if, acting independently, he engaged in a fraudulent transaction for his own benefit and by which the bank was not benefited, and enjoyed none of the fruits of the fraud, the bank cannot be held liable nor can the knowledge of his guilty purpose be imputed to it. Once or twice in the course of this charge I have necessarily used the expression about the bank being put upon inquiry.

The inquiry referred to there is the inquiry that grows out of a sense of duty and responsibility, and not from idle curiosity or impertinent inquisitiveness. That is to say, that if the act of drawing the money by Small, the executor and depositor, was surrounded by such circumstances of suspicion as made it the duty of the bank to investigate, and if that investigation would reasonably have led to the disclosure of such facts or the obtaining of such information as would have made it the duty of the bank to have refused to pay the money out, in such case the bank would be held liable. But, as has been argued to you very properly, it is not the law that the bank should inquire into the purpose of a depositor in drawing out a fund, even though that depositor be an executor drawing out a trust fund. There must be other circumstances to make the inquiry to which the law refers necessary. If the facts in the evidence show you satisfactorily that in drawing the money out, Small was acting officially for the bank, as its president or other agent, actually representing it, then his knowledge is to be attributable, and if loss ensued to the estate of William Knobelock or the *cestui que trust* by such official act of Small, the bank would be liable for the loss. If he acted as any other person might have done with his deposit, drawing checks, which the bank was liable under the law to honor, then his knowledge could not be imputed to the bank, and if loss ensued to the estate of William Knobelock or the *cestui que trust* by such drawing out of the money, the bank cannot be held liable for such loss unless there is evidence that the bank profited by the fraud. In such case the bank would be held liable to the extent of the benefit, not simply under the law of notice, but because of the equitable doctrine that a principal cannot benefit by the fraud of its agent.

The following is so much of the opinion of the Circuit Judge as is necessary to understand the issues:

In the decree filed by me in this case on 18th May, 1896, I said I would give my reasons at length hereafter. I now

do so.   On the motion of the plaintiff, as shown in the decree filed 18th May, 1896, the two issues in this case were referred to a jury, which has passed upon them.   There has been no demand for a new trial, and, under the law, the finding of the jury, unless set aside, is conclusive.   Code, sec. 274a; Constitution 1895, art. V., sec. 4.   Upon the issues thus submitted to them, in response to the question, "2d.  Did said bank, at the time said money was drawn out as aforesaid, have notice that said Jacob Small was drawing the same with the intent and for the the purpose of misappropriating the same to his own use?" the jury having found no, the case is disposed of as far as the defendant bank is concerned, and the complaint and action must be dismissed as to it.   The Supreme Court, in the case of *Jacob Knobelock, adm'r, &c.,* v. *The Germania Savings Bank, &c.,* in 43 S. C., 233, speaking of these very transactions, say: "When the executors of the last will and testament of Wm. Knobelock, sr. (of whom Jacob·Small was one), placed on deposit as such executors in the defendant bank the sum of $7,728.48" (being the aggregate amounts of $2,000 and of $5,728.48, for which this and the other suit with the same title were tried at the late term of the Court for Charleston County), "under the decisions of the Court of last resort in this State (*Fogartie & Stillman* v. *State Bank,* 12 Rich., 518; *Simmons &c.* v. *Bank of Greenwood,* 41 S. C., 177), there arose an implied contract between the defendant bank and said executors, or the survivor of them, that such defendant bank would pay all checks drawn by such executors, in such amounts and to such persons as may be mentioned in such checks, as long as there remained to the credit of such executors on such account an amount sufficient to pay such checks. * * * If this proposition of law is sound, and under the authority of the two cases just cited we hold it to be sound law in this State, there could be no liability in law, as distinguished from equity, upon the defendant bank for paying the checks of the depositing executor.   If the payment of such check by the defendant bank could create any

liability, it must be for a breach of some trust owed by the bank to *cestuis que trust* under William Knobelock's last will. It is this liability, arising from some breach of some such duty or trust alone, which the plaintiff here seeks to enforce."

Neither in the trial of this case before the jury or since has there been any testimony or proof whatever adduced to show that there was any duty or trust owed by the bank to the *cestuis que trust* under William Knobelock's will, except such as arose from the fact that the deposit was made in the name of the executors. The jury have found that Small at the time he drew this money out intended to misappropriate it. The only remaining question is, had the bank notice of this fraudulent intent? The jury have found that it did not have such notice, and their finding is conclusive. I think it proper to say, however, that I concur in their verdict. No attempt was made to show that the bank had actual knowledge of Small's intention to convert this fund to his own use. Nor were there any circumstances connected with the withdrawal of the fund calculated to excite suspicion or provoke inquiry. The plaintiff's case rested entirely upon the fact that at the time of the transaction Small was president of the bank. This, it was claimed, affected the bank with constructive notice of Small's guilty intent, upon the ground that his knowledge was necessarily the knowledge of the bank.

It is a well settled rule that a corporation is chargeable with the knowledge of its officer, when he is representing it in any transaction. In the case at bar, Small was not acting for the bank, but was acting for himself. Acting independently for himself in a fraudulent transaction for his own benefit, and from which the bank did not derive the slightest advantage, his guilty knowledge cannot be imputed to the corporation. In my charge to the jury, I left it to them to say whether the facts in evidence satisfied them that in drawing the money out, Small was acting officially for the bank as its president. They were told that if

he represented the bank, his knowledge would be imputable to the bank, and that if loss ensued to the estate of William Knobelock from what was done, the bank would be liable for the loss, but that if he acted for himself, then that his knowledge was not imputable to the bank, and it would not be liable for any loss sustained in consequence of the misappropriation of the fund. The result of the finding of the jury, which I think correct, was that it was not shown that Small was acting officially for the bank as its president, and it necessarily follows that the complaint should be dismissed. As I said to the jury in my charge on the trial of the issues in this case, under the law of notice, not only is the bank bound by and held liable for the acts of its agent, done in the line of his duty as such, but the bank is held chargeable with the knowledge of its agent or officer, when he is acting for the bank and representing the bank in any transaction. But to this rule of law, as with all rules, there are some exceptions. Thus, where an agent or officer could not communicate his knowledge without a breach of official confidence—as, for instance, should that agent be an attorney at law, and as such had obtained from his client confidential communications. It is not to be presumed that he would communicate such information; under the law he cannot. So, also, where an agent or officer is about to commit a fraud, it is not to be presumed that he will divulge the guilty fact to his principal or to his colleagues. In such cases of fraud the general presumption that the agent will communicate his knowledge to his principal is displaced by the stronger special presumption that he will not do what would effectually defeat his purpose; but this counter-presumption will not avail where an agent or officer acting, or ostensibly acting, in behalf of his principal or corporation, commits a fraud upon a third person and not upon his principal or corporation; in such case the principal or corporation will be held chargeable with the guilty knowledge of the agent or officer; that is to say, if he is acting in behalf of the corporation and representing it in the transaction. For example, should a

18—50

bank president acting officially and representing the bank in the transaction commit a breach of trust or perpetrate a fraud upon a third person, the knowledge of that officer that his act is fraudulent, and his purpose is fraudulent and a breach of trust, will be imputed to the bank, and the bank would be properly considered a party to the fraud, and held liable to the injured person for his loss. But the rule is different when the agent or officer is dealing with the bank or corporation in the particular transaction in his own behalf and not as such agent or officer when acting independently on his own behalf, even though an officer of the bank, his position is hostile to the bank or corporation, he stands in the attitude of a stranger; he is dealing at arms' length with the bank or corporation. Hence this other exception to the general rule, that when an agent or officer is acting for himself and not for his bank or corporation in transacting business with the bank or corporation in the same way that any other person might do, the law will not impute to the bank or corporation any knowledge of his relating to the matter in hand. In such case the agent's interest is opposed to the bank or corporation, and the presumption will be not that he will communicate his knowledge, but that he will conceal it. These principles are abundantly sustained by a multitude of authorities, both in this country and England. Among others, see: Note 24, Am. Stat. Rep., p. 228; *In re* Marseilles Extns. Railway Co., L. R. Ch. App., 7, p. 161; *Cave* v. *Cave*, L. R. Ch. Div., 15, p. 639; *Mayor & Aldermen of New York* v. *10th Nat. Bk.*, 111 N. Y., 446; *Com. Bank* v. *Cunningham*, 41 Mass., 270; *Washington Bank* v. *Lewis*, 49 Mass., 24; *Innerarity* v. *Bank*, 139 Mass., 332; *Barnes* v. *Trenton Gas Light Co.*, 27 N. J. Equity, 33; *Frenkel* v. *Hudson*, 52 Ala., 150; *Wickersham* v. *Chicago Zinc Co.*, 18 Kans., 481; *Davis Importing Co.* v. *Davis &c. Co.*, 20 Fed. Rep., 699; *Thompson Houston Electric Co.* v. *Capital Electric Co.*, 56 Fed. Rep., 849, and 65 Fed. Rep., 541; Cook on Stock, &c., 3 Edn., note to sec. 727, p. 1115; Eng. & Am. Enc. of Law, 1 vol., "Agency," p. 423; Dis-

tilled Spirits, 11 Wall., 356; *Akers* v. *Rowan*, 33 S. C., 461; *Raply* v. *Klugh*, 40 S. C., 134.

The plaintiff appeals on the following exceptions:

1. That his Honor erred in adjudging that the complaint herein be dismissed as against the defendant, the Germania Savings Bank of Charleston, S. C.; whereas his Honor should have held that the complaint herein stated a good and equitable cause of action against the defendant, the Germania Savings Bank, and that the evidence supported the same.

2. That his Honor erred in the opinion filed by him stating his reasons for making his judgment aforesaid, in finding that there had been no testimony or proof whatsoever adduced to show that there was any duty or trust owed by the defendant bank to the *cestuis que trustent* under William Knobelock's will, except such as arose from the fact that the deposit was made in the name of the executors. Whereas his Honor should have held that there was evidence to show that the bank, at the time it paid the checks drawn by Jacob Small, the proceeds of which he intended to misappropriate, knew or was aware of such circumstances as should have made it know that Small so intended to misappropriate the proceeds of said checks; and at that moment the bank was so put on notice as that a disregard of the same constituted a participation by it in the breach of trust intended by Jacob Small.

3. That his Honor erred in the said opinion in finding that the plaintiff's case rested entirely upon the fact that at the time of the transaction Jacob Small was president of the defendant bank; whereas his Honor should have held and found that the plaintiff's case rested upon the facts that at the time of the transaction not only was Small president of the bank, but in connection with his presidency there were other circumstances known to Small and to the other officers of the bank which were sufficient to notify the bank as well through Small as through its other officers, that Small intended to misappropriate the proceeds of the said checks.

4. That his Honor should have held that in the case at bar, as a conclusion of fact, Small was acting not for himself alone but was also acting for the bank, and that in such case his guilty knowledge was imputable to the bank.

5. That his Honor should have held, as a conclusion of law, that where the participation of a corporation itself in a transaction arises from the circumstance that the officer participating in the transaction is its president, and that that officer is at that time engaged in a fraudulent transaction, which he is enabled to perpetrate by means of his position in the corporation, then and in that case his guilty knowledge is imputable to the corporation.

6. That his Honor should have held that he had erred in his charge to the jury on the trial of the issues, inasmuch as his Honor erred in charging the jury that if Jacob Small and his coexecutor originally placed the money on deposit in the defendant bank, and if he was at the time he drew the money out acting as sole surviving executor, and authorized to act as such, then the bank was reasonably bound to pay the check of Jacob Small to the extent of the deposit, and for any loss which the *cestuis que trustent* may have suffered by the misappropriation of the money by Jacob Small, the bank will not be liable in law, unless the bank, as a bank, was guilty of a breach of trust towards this *cestui que trust* under the will of William Knobelock, or acted in collusion with Jacob Small in a fraudulent plan and purpose to misappropriate the money on deposit. Whereas his Honor should have charged, as requested by the plaintiff in his request to charge numbered 6, and not having modified the same as hereinbefore set forth; and in such modification his Honor erred in so charging, without additionally charging the jury that the bank was liable in law, if, at the time it paid the check of Jacob Small, it had such notice as was sufficient to put a reasonable man upon an inquiry if Small intended, when drawing out the money so on deposit, to misappropriate and convert the same to his own use, and that the knowledge on the part of the bank of such inten-

tion was sufficient to convert it into a trustee for the parties beneficially entitled to such deposit and to render it guilty of a breach of trust towards the same in permitting Small to receive such deposit.

7. That his Honor should further have held that he was in error in his charge to the jury upon the trial of the issues, inasmuch as his Honor erred in refusing to charge, as requested by the complainant, that if Small never ostensibly in any of his transactions with the bank concerning this deposit, held himself out to the bank as dealing with the deposit in any way as an individual, but, on the contrary, his professions and actions were that he was a fiduciary of the trust, and as such alone dealt with the bank; then, as there was nothing to indicate to the bank that Small was dealing with it as an individual, the reason ceased for holding that when an officer of a corporation enters into a transaction with it for his individual benefit, he, in reference to that transaction, must be supposed to act at arms' length with the corporation. For the protection of third persons it must rather be presumed that the principal has authorized the agent to act with notice of the fraud.

8. That his Honor should further have held that he was in error in his charge to the jury, in that his Honor in refusing to charge the 9th request to charge on behalf of the plaintiff, to wit: "If, on the lines heretofore charged, the jury believe that the bank, through Jacob Small, its president, knew that the fund in question was held by Jacob Small, surviving executor for the *cestuis que trustent*, and that it was about to be misappropriated by Jacob Small, then it owed a high duty to the beneficiaries of the fund it held in its charge for them, and if this fund has been so misappropriated, the bank was liable."

9. That his Honor should have held that he was in error in charging the jury in modifying the 11th request to charge of the plaintiff, to wit: "That the question of notice to the bank of the intention of Jacob Small to misappropriate the money drawn out by him, is a conclusion to be arrived at

by the jury, from all the circumstances detailed in the testimony. That they are not limited alone to the knowledge of Jacob Small obtained by him as executor, but the jury are to consider the testimony as a whole, the knowledge of the other officers of the bank, circumstances occurring within their knowledge; and if they find from all the circumstances of the case that the other officers knew or had such grounds as would have been sufficient to a reasonable man for knowing that Jacob Small intended to use this fund so drawn by him for that purpose, then that was sufficient to give notice to the bank of such knowledge," by adding thereto, "Provided, that the testimony satisfies you as a jury that Small was acting officially for the bank in the transaction, and not acting as a depositor drawing on his deposit." Whereas his Honor should have charged such 11th request as hereinbefore given, without any such modification; and his Honor erred in modifying the same to the effect that Small must have acted officially for the bank in the transaction, because if from the circumstances surrounding the transaction the bank was made aware of the fact and put upon notice that Small intended to misappropriate and to convert the money so drawn by him to his own use, the bank was then responsible and liable at law to the beneficiaries entitled to the funds, whether or no Small was acting officially for the bank in the transaction.

10. That his Honor should have held that he was in error in his charge to the jury upon the trial of the issues, inasmuch as his Honor erred in charging the jury that the knowledge of an agent of a corporation or other principal, while engaged in a fraud for his own benefit, cannot be imputed to such corporation or other principal, unless also the corporation or principal is benefited by the fraud, in which case the corporation or other principal would be liable to the extent of his benefit received from the fraud. Whereas his Honor should have charged the jury that the knowledge of an agent of a fiduciary character of a corporation, while engaged in fraud for his own benefit, which fraud he is enabled

to perpetrate by reason of the position which he holds as agent of such corporation, is imputed to such corporation or other principal, irrespective of the fact whether or no the corporation is benefited directly by the fraud so perpetrated.

11. That his Honor should have held that having so erred in his charge to the jury, the verdict of the jury was not conclusive, but a new trial would have to be had, and that in such case no judgment could be rendered in the present cause.

12. That his Honor erred in rendering any judgment, inasmuch as it appeared that his Honor erred in his charge to the jury, and that, therefore, the conclusions of the jury were erroneous, under his Honor's charge; and that there should either be a new trial or that his Honor should find, as a conclusion of fact, that the defendant bank, at the time the money was drawn out by Jacob Small under the said checks, had notice that the said Small was drawing the same with the intent and for the purpose of misappropriating the same to his own use.

13. That his Honor should have held, as a conclusion of law, that in the transaction in the case at bar that Small, at the time he directed the payment of the said checks, intending at such time to misappropriate the proceeds thereof, was acting on behalf of the defendant bank, and using his position therein to commit a fraud upon third persons, and that, therefore, his guilty knowledge was imputable to the defendant bank, and it was liable therefor.

14. That his Honor erred in finding, as a conclusion of law, in his said opinion, that the rule is different when the agent or officer, in dealing with the bank or corporation in a particular transaction in his own behalf, and not as such agent or officer, when acting independently on his own behalf, even though an officer of the bank, his position is hostile to the bank or corporation, he stands in the attitude of a stranger; he is dealing at arms' length with the corporation. Whereas his Honor should have held that such rule is not different when the officer so dealing is secretly in a

hostile attitude to the bank or corporation; but his Honor should have held that where the action of an officer of a corporation becomes possible only by reason of his position in such corporation, and that his hostile position to such bank or corporation is a secret or unavowed one, by reason of his secret fraudulent intent, in such case, so far as the third persons are concerned, he is not dealing at arms' length with the bank or corporation, but must be held to be acting by virtue of his position therein, and that the corporation having put it in his power to so act by appointing him in such position, is chargeable with his fraudulent intent, and liable for his action.

*Messrs. Buist & Buist* and *Mitchell & Smith*, for appellants, cite: *Judge must respond to every request to charge:* 25 S. C., 180; 34 S. C., 40. *Guilty knowledge of officer of the bank imputable to the bank:* 43 S. C., 233; 15 Wall., 165; 15 Fed. R., 1040; 26 S. C., 550; 19 Vt., 410; 10 N. Y. S., 278; 17 S. C., 340; 7 S. C., 88; 147 Mass., 281; 5 S. C., 390; 100 U. S., 699; 20 Wall., 64; 72 N. Y., 293; 139 N. Y., 313; 17 Vesey, 168; 7 Johns. Ch., 160; 31 Beav., 42; 36 Am. Dec., 188; 11 S. C., 407. *The rule that where an officer of a corporation enters into a transaction with it for his individual benefit as to notice to the corporation, does not apply where he so acts in fiduciary capacity:* 41 Mass., 270; 139 Id., 232; 27 N. J. Eq., 23; 82 Ala., 158; 18 Kan., 481; 20 Fed., 699; 111 N. Y., 446; 56 Fed. R., 341; 33 S. C., 472; 40 S. C., 150; 11 Wall., 356; 28 Am. St., 231; 36 Am. Dec., 193; 6 S. C., 821; 35 N. E. R., 282; 60 Fed., 78; 8 Fed. R., 8; 74 Id., 1000; 15 S. E. R., 888; 39 Am. Rep., 329. *The bank is bound by any kind of notice:* 14 S. C., 321.

*Messrs. James Simons* and *Lord & Burke*, contra, cite: *Bank properly dismissed:* Code, 274a; Con. 1895, art. v., sec. 4; 43 S. C., 242. *Judge was right in stating bank had no notice:* 26 S. C., 374; 40 S. C., 276; 47 S. C., 344; 41 S. C., 440; 11 S. C., 195; 44 S. C., 344; 43 S. C., 223. *Judge not bound to use exact words of request in charging:* 42 S.

C., 473; 45 S. C., 146.    *The president of the bank acted for his own benefit in drawing out the money:* 39 S. C., 295.    *If the president was acting adversely to the bank and in his own interest, or intended to misappropriate the fund, his knowledge cannot be imputed to the bank:* 8 Fed. Rep., 10; 5 L. R. Ch. App., 358; 7 L. R. Ch. App., 161; 15 L. R. Ch. Div., 639; 53 N. Y., 144; 111 N. Y., 446; 2 Hill, 451; 37 N. Y., 320; 72 N. Y., 291; 82 N. Y., 291; 99 N. Y., 131; 9 Penn. St., 27; 22 Pic., 24; 25 Conn., 444; 41 Mass., 270; 39 Mass., 24; 124 Mass., 506; 139 Mass., 332; 121 Mass., 490; 7 L. R. Ch., 170; 22 Pick., 24; 27 N. J. Eq., 33; 82 Ala., 150; 27 N. W., 954; 47 N. W., 913; 18 Kan., 481; 33 S. C., 472; 11 Wall., 356; 8 Fed. Rep., 1; 20 Fed. Rep., 699; 57 Fed. Rep., 20; 63 Fed. Rep., 647; 66 Fed. Rep., 216; 65 Fed. Rep., 341; 21 S. E. R., 20; 33 S. C., 451; 40 S. C., 134; 23 S. E. R., 939, 942.    *Small's knowledge no notice to bank:* 19 How., 385; 39 S. C., 295.    *Complaint does not state a good cause of action:* 25 Fed. R., 255; 8 Ch. D., 444; 104 U. S., 54; 4 Mad., 332; 37 Bar., 129.    *Request not in proper form may be refused:* 45 S. C., 146.    *Request assuming fact should be refused:* 18 Wall., 436.

Aug. 21, 1897.    The opinion of the Court was delivered by

MR. JUSTICE JONES:    Two actions, entitled as above, were heard together.    These actions were brought to recover, in the aggregate, $7,728.48, with interest, from the Germania Savings Bank and the estate of Jacob Small.    The decree below dismissed the actions as to the Germania Savings Bank, and the appeal is therefrom.    The complaints, in substance, so far as material to state here, alleged that in February, 1891, Jacob Small, then being a director and president of the Germania Savings Bank, directed said bank to pay over to him, and did take from said bank, the sums of $2,000 and $5,728.48, aggregating $7,728.48, besides interest, the property of the estate of William Knobelock, sr., of which estate said Jacob Small was the executor, and then intended to, and did, misappropriate and convert same to

his own use and not to the use of the said estate of William Knobeloch, sr., all with the knowledge of the said bank and without the knowledge of the *cestuis que trustent* of said estate. Jacob Small was a director and president of the Germania Savings Bank, and "took a general interest in, and an active supervision over, the bank's business" at the time of the transaction complained of. On the 31st day of December, 1890, there was on deposit in the Germania Savings Bank $30,910.98 to the credit of Jacob Small and William Knobelock, jr., executors of William Knobelock, sr., deceased. The coexecutor, William Knobelock, jr., died in May, 1890, leaving Jacob Small surviving executor. In January and February, 1891, all of this fund, except $7,728.48, was duly paid to or set apart for the *cestuis que trustent* entitled thereto. Of this last mentioned sum to which the plaintiff's *cestuis que trustent* were entitled, Jacob Small, on check in proper form, as executor, drew $2,000, February 7th, 1891, which was paid to him by the teller of the bank, whose duty it was to pay out money, who took Small's receipt therefor, as executor, and on the 20th day of February, 1891, Small drew out in cash the remaining $5,728.48, which was paid to him by the same teller on Small's check, as executor, and his receipt therefor. Small misappropriated this money, and on the 5th day of December, 1893, died. On the 5th day of February, 1891, the day before Small drew out the $2,000, the plaintiff, Jacob Knobelock, was duly appointed as cotrustee with Jacob Small. On the 7th February, 1891, Small delivered to the plaintiff a sealed envelope and said, "Jacob, put this in your box." This envelope was opened after Small's death, and there was found therein the following paper: "February 7th, 1891. Due estate of William Knobelock, sr., $2,000 on the share belonging to Mrs. Fred. Ostendorff. (Signed) Jacob Small." This lead to the discovery of Small's breach of trust.

Under the pleadings the following issues of fact were submitted to a jury: "When Jacob Small, on or about the 28th

day of February, 1891, drew out of the Germania Savings Bank of Charleston, S. C., $5,728.48, then on deposit in said bank to the credit of Jacob Small and William Knobelock, sr., did he draw the same with the intent and for the purpose of misappropriating and converting the same to his own use? 2. Did said bank, at the time said money was drawn out as aforesaid, have notice that Jacob Small was drawing the same with the intent and for the purpose of misappropriating and converting the same to his own use?" Similar issues were submitted in the action for $2,000. The jury in both actions responded *yes* to the first question and *no* to the second. No effort was made to set aside this finding of the jury. A decree was accordingly made, in which the Circuit Court concurred in the finding of the jury, and *inter alia* dismissed the complaint against the defendant bank.

The opinion of the Circuit Judge, beginning at folio 284, "Case," and the charge to the jury, beginning at folio 213 and ending at folio 260, and the exceptions thereto, appear in the official report.

I. The findings of fact by the jury are conclusive, unless the Circuit Judge grant a new trial, according to the practice in other jury trials, or unless this Court remand for a new trial for error in the rulings or charge of the presiding Judge on the trial of the issues of fact by the jury. Sec. 274a, Code of Civil Procedure. This Court has no jurisdiction to review findings of fact, even in chancery cases, where the facts are settled by a jury, and their verdict is not set aside. Constitution 1895, art. 5, sec. 4.

II. Such findings of fact by the jury not set aside being conclusive on the Circuit Court, exceptions that the Circuit Judge should have found facts inconsistent with the facts found by the jury are not tenable.

III. Did the Circuit Judge commit error in his rulings and charge to the jury, for which this Court may remand for a new trial? The 6th, 7th, 8th, 9th, and 10th exceptions seek to point out such error. 1. The 6th exception complains of the modification which the

Circuit Judge made to plaintiff's sixth request to charge. Reference should here be made to the sixth request to charge, the remarks of the Judge in connection therewith and the sixth exception, all of which are too lengthy to repeat here. This request to charge was defective in not distinguishing between the act of Jacob Small, officially, as agent for the bank, and the act of Jacob Small, as a depositor in said bank, acting for himself. The Circuit Judge correctly pointed out this distinction and qualification, and his language in connection therewith was fully warranted by the decision of this Court in *Knobelock* v. *Bank*, 43 S. C., 240. In so far as this exception complains of mere failure to charge, we have several times said that a mere failure to charge a specific proposition in the absence of a request therefor is not reversible error. As a matter of fact, however, the Circuit Judge did in another place charge practically as appellant complains he should have done, for he expressly charged as follows: "In other words, did the bank know, or have reasonable grounds for knowing, that Small intended and purposed to misappropriate and convert the money to his use? If it did not actually or constructively know that such was his intent and purpose, was the act of Small committed under such circumstances as should reasonably have put the bank on inquiry, and would such inquiry, if pursued, have reasonably led to such information as would have prevented the drawing of the money by Small?"

2. The 7th exception alleges error in the refusal to charge plaintiff's 8th request to charge. This request to charge, as we understand it, was that if Small dealt with the bank as to this deposit ostensibly as a *trustee*, but *secretly* as an *individual*, his knowledge of his own fraudulent intent, with reference to this deposit, is imputable to the bank of which he was president. We are unable to see the merit of this distinction. The question was not whether Small was acting for himself as trustee, or for himself as an individual, but whether, in the transaction of

drawing out the deposit, he was in any way acting for the
bank. Knowledge of Small's fraudulent intent with refer-
ence to the deposit was not imputable to the bank, unless,
in the particular transaction of paying out and receiving
the deposited money, Small acted for the bank. If Small
acted ostensibly as trustee or executor, but secretly for him-
self as an individual, then clearly he did not in that trans-
action represent the bank.

3. The 8th exception complains of the refusal of plain-
tiff's ninth request to charge. This request to charge was
ambiguous. Does it mean, "if the jury believe that
the bank through Small, its president, knew that the
fund in question * * * was about to be misappro-
priated by Jacob Small, &c.?" or does it mean, "if the jury
believe that the bank through Small, its president, knew
that the fund in question was held by Jacob Small, surviv-
ing executor, for the *cestuis que trustent*, and [if the jury
believe] that it was about to be misappropriated by Jacob
Small, &c.?" It was possible for the jury to believe that
Small intended to misappropriate the fund, but that the
bank did not know of that intention, as their findings show
they did. The Judge evidently understood the request in
the latter sense indicated above, for he said: "That would
be to make the bank executor of the estate, devolving upon
the bank all the duties of the executor. * * * The only
ground upon which the bank could be held liable would be
some breach of trust, as I have explained to you. I cannot
charge that proposition in that form." It is clear that if
the only knowledge, actual or imputed, which the bank
had, was that the deposit was held by Small as trustee for
certain *cestuis que trustent*, it would not be liable for honor-
ing the trustee's checks in proper form. Under such cir-
cumstances, the bank had the right to assume that the
trustee was lawfully performing his duty, and was bound
to honor its customer's check in proper form. *Gary v.
National Bank*, 26 S. C., 550; *Knobelock* v. *Bank*, 43 S. C.,
240. It is not error to refuse an ambiguous request to

charge. But, besides this, the request to charge, if under-
stood in the sense most favorable to appellant's view of the
law, was inapplicable to the issues before the jury. The
request related to the application of the law by the Judge
to the facts found, and did not relate to the law to govern
the jury in their findings of fact.

4. The 9th exception charges error in modifying plain-
tiff's 11th request to charge. This request to charge is
faulty in at least two particulars: (1) To have charged the
jury "that they are not limited alone to the knowledge of
Jacob Small, obtained by him as executor, &c.;" as
requested, would have been to have charged in effect
that in determining the question whether the bank
had notice of Small's fraudulent intent, the jury should
consider the knowledge of Jacob Small *as executor*. The
real question was whether in the transaction under consid-
eration Small was acting as agent for the bank. The bank
is presumed to know what its president knew *as its agent*,
but not what Small knew *as executor*. (2) The charge re-
quested assumed as a fact that there was testimony as to "the
knowledge of the other officers of the bank, circumstances
occurring within their knowledge." The Judge, instead of
refusing this request absolutely, as he might properly have
done, attempted to relieve the proposition presented of some
of its errors, by adding, "Provided, that the testimony satis-
fies you as a jury that Small was acting officially for the
bank in the transaction and not acting as depositor drawing
on his deposit." This modification was not erroneous. The
Circuit Judge did not mean to exclude, and did not exclude
from the jury, consideration of any testimony that might be
in the case concerning the knowledge of the bank obtained
through other officers than its president; for, as shown al-
ready in the discussion of the 6th exception, the jury were
clearly instructed to consider whether the act of Small was
committed under such circumstances as should reasonably
have put the bank on inquiry. Besides this, he had already,
at plaintiff's request, charged that "knowledge brought home

to the agent of the corporation possessing authority to act, and acting in the matter to which the notice relates, is the strongest case for charging a corporation with notice of matter known to its agents," in accordance with the decision in *Webb* v. *Graniteville Manfg. Co.*, 11 S. C., 408. The modification of an erroneous request to charge which frees it from some of its fault, is not reversible error at the instance of the party preferring the request, even though the charge as modified be not faultless.

5. The 10th exception relates to the response of the Circuit Judge to the 9th request to charge on the part of the defendant bank. The request to charge was as follows: "That knowledge of an agent of a corporation or other principal, while engaged in a fraud for his own benefit, can not be imputed to such corporation or other principal." In response to this request the Judge added, "Unless also the corporation or the principal is benefited by the fraud, in which case the corporation or other principal would be liable to the extent of its benefit received from the fraud." The last clause of this charge, so far as it relates to the *extent* of the liability of the principal participating in the profits or the fraud of the agent, had nothing to do with the issues of the fact before the jury, and, therefore, whether erroneous or not, could not have been prejudicial, and so it will be eliminated from the consideration here. The question remains whether it was error to instruct the jury, "That knowledge of the agent of a corporation or other principal, while engaged in a fraud for his own benefit, can not be imputed to such corporation or other principal, unless also the corporation of the principal is benefited by the fraud." This charge standing alone might need some qualification or explanation, but when considered, as it must be, in connection with the whole charge, it is not erroneous. Just previously the defendant bank had requested the Judge to charge, "7. That in order to charge a bank with notice of the facts of which its president or other officer has knowledge in reference to a transaction, he must have acted in the transac-

tion on behalf of the bank," to which the Judge added, "*if he was acting either wholly or partially for the bank.*" When, therefore, he qualified the request under consideration, he meant to correct it in the same particular. The expression, "knowledge of an agent of a corporation or other principal, *while engaged in a fraud for his own benefit,*" without explanation, might have been supposed by the jury not to exclude any participation by the principal in the profits of the fraud; hence the Judge, to avoid such impression, added the qualifying words, thereby making it clear to the jury that knowledge of an agent while engaged in a fraud for his own benefit, in which the principal is not in any way a participant, can not be imputed to the principal. Participation by the principal in the fruits of the agent's fraud is not the test whether the agent's knowledge is imputable to the principal, but it affords evidence on the question whether the agent in the fraudulent transaction was acting within the scope of his agency, previously authorized or subsequently ratified, which *is* the test.

The Circuit Court having committed no error in his rulings on the trial of the issues of fact before the jury, such findings are conclusive here. It is established, therefore, in this case, (1) that Small drew out the said deposit in the defendant bank with intent to misappropriate it and convert it to his own use; (2) that the bank, at the time the money was drawn out, had no notice of Small's fraudulent intent. This negatives both actual and constructive notice. Under the issues presented and the charge of the Judge, the jury, in reaching their conclusion of the second issue, necessarily determined that Small, when he drew out the deposit, was acting for himself in his character as depositor, and in no way for the bank. Hence it follows that the bank was in no wise concerned with Small's breach of trust as executor, and the complaint against the bank was properly dismissed. The decree and opinion of the Circuit Court is not only free from error, but is commendable for its lucid exposition of the law of imputed knowledge as applicable to the case.

The principles announced are well supported by the authorities; by the text books. See Story on Agency, sec. 140; Angell & Ames on Corporations, §§ 308, 309; Cook on Stockholders, 3 ed., vol. 2, § 727; Morse on Banking, §§ 104, 317; Eng. & Am. Ency. Law, vol. 1, p. 423; by the law of England, see *Kennedy* v. *Green*, 3 Myl. & K., 699; *Espin* v. *Pemberton*, 3 DeGex & J., 547; *In re European Bank*, 5 Ch. App., 358; *In re Marseilles Extension Ry. Co.*, 7 L. R. Ch. App., 161; *Rolland* v. *Hart*, 6 Ch. App., 678; *Cave* v. *Cave*, 15 L. R. Ch. Div., 639; by the Court of the United States, see *Boydin* v. *U. S.* (The Distilled Spirits), 11 Wall, 356; *Bank of Sheffield* v. *Tompkins*, 57 Fed. Rep., 20; *Western Mortg. & Investment Co.* v. *Ganzzer*, 63 Fed. Rep., 647; *Hudson* v. *Randolph*, 66 Fed. Rep., 216; *Thomson Houston Electric Co.* v. *Capital Electric Co.*, 65 Fed. Rep., 341, 12 C. C. A., 643; by many of the State Courts, see the following cases: *Frenkel* v. *Hudson*, 82 Ala., 158, 60 Am. Rep., 736; *Innerarity* v. *Bank*, 139 Mass., 332, 52 Am. Rep., 710; *Wickersham* v. *Chicago Zinc Co.*, 18 Kan., 481, 26 Am. Rep., 54; *DeKay* v. *Water Co.*, 38 N. J. Eq., 158; *Winchester* v. *R. R.*, 4 Md., 231; *Bank* v. *Burgwyn* (N. C.), 14 S. E. Rep., 623. See, also, note to *Fairfield Bank* v. *Chase*, 39 Am. Rep., 331; note to *Bank of Pittsburg* v. *Whitehead*, 36 Am. Dec., 188; note to 8 Fed. Rep., 10; and note in 24 Am. St. Rep., 228. The latest utterance on the subject we have seen is from the Supreme Court of Pennsylvania, 37 Atl. Rep., 550, as follows: "The rule that knowledge or notice on the part of the agent is to be treated as notice to the principal, is founded on the duty of the agent to communicate all material information to his principal, and the presumption that he has done so. But legal presumptions ought to be logical inferences from the natural and usual conduct of men under the circumstances. But no agent who is acting in his own antagonistic interest, or who is about to commit a fraud by which his principal will be affected, does, in fact, inform the latter, and any conclusion drawn from a presumption that he has done so is con-

trary to all experience of human nature.   If it be urged, as in some cases, that the principal, having put the agent in his place, should, as a matter of public policy, be held answerable for all the latter does, a sound answer is suggested by the Court in *Allen* v. *Railroad Co.*, 150 Mass., 200, 22 N. E. Rep., 917, that an independent fraud committed by an agent on his own account is beyond the scope of his employment, and bears analogy to a tort wilfully committed by a servant for his own purposes, and not as a means of performing the business intrusted to him by his master." The rule imputing to the principal the agent's knowledge is by some courts based upon the reason that the agent is substituted for the principal, has legal identity with the principal, and under the operation of this reason, the principal is more inflexibly held bound by the agent's knowledge.   Other courts, by far the majority, including our own, base the rule on the ground that it is the duty of the agent to communicate to his principal all knowledge which he possesses material to the principal's business, and the presumption that he has done that duty.   Under the operation of this reason, what are sometimes called exceptions or qualifications to the rule have grown up.   For example, an agent is not presumed to have communicated to his principal professional confidences received in representing a third person (*Akers* v. *Rowan*, 33 S. C., 473), or knowledge acquired while acting for himself or for a third person and not for the principal (same authority), or where the knowledge is such that, according to human nature and experience, the agent is certain to conceal, or where the agent is acting in an adversary relation to the principal, or meditates a fraud against his principal or some third person in his own interest which would be defeated by disclosure.   This last qualification is recognized in *Raply* v. *Klugh*, 40 S. C., 151, in which note to 39 Am. Rep., 331, is referred to.   But what are sometimes spoken of as exceptions to the rules are not so much exceptions as they are facts or conditions which render the rule inapplicable.   "In the relation of the prin-

cipal to a third party, the undisputed rule exists, that notice to the agent is notice to the principal, *if the agent comes to the knowledge of facts while he is acting for the priacipal"* (italics ours). 1 Enc. Law, 419. See, also, *Akers* v. *Rowan*, 33 S. C., 473, where the Court said: "The Circuit Judge overlooked the qualifications to the admitted general rule, that notice to the agent is notice to the principal. Sloan, though he was at the time the solicitor of the bank and one of its directors, did not acquire knowledge of the fact that suits were commenced against Robbins *while acting in either of those capacities"* (italics ours). Speaking of the last mentioned case, this Court, in *Raply* v. *Klugh*, 40 S. C., 151, said: "The bank was exonerated from responsibility of the knowledge of its agent (solicitor and director), because such knowledge of its agent was not acquired *while engaged in business for the bank, but was acquired while acting as the solicitor of Robbins himself"* (italics ours). In the case of *Bickley* v. *Bank*, 39 S. C., 294, the Court sustained the following charge by the Circuit Judge: "If the president of the bank commits a fraud relative to a subject *that does concern his duty to the bank in dealing with strangers and other persons* having business with the bank, the corporation will be liable to such third person or persons for such acts and misdeeds of its president and agent." This last case also shows that in the absence of evidence to the contrary, it is not the duty of the president of a bank to *receive* deposits. From this it would seem to follow that in the absence of evidence to the contrary, it is not the duty of a bank president to *pay out* deposits. In the case at bar, although the president was shown to have a general supervision over the bank's business, it was shown to be the special duty of the teller to pay out the bank's money. In the case of *Bank of Charleston* v. *Bank of South Carolina*, 13 Rich. Law, 291, it was held that the plaintiff could not recover of the defendant money which defendant's teller, without authority, borrowed from the plaintiff's bank from the teller thereof, who had no authority to lend money of

the bank, which money defendant's teller secretly placed in his till, to escape detection for having abstracted and fraudulently used the money of his bank, which borrowed money became mingled with the money of the defendant bank, and was afterwards used by the defendant's teller for his bank in current transactions. The Court said: "Is the *bona fides* of the defendant bank in the transaction subject to just suspicion? On this head nothing has been imputed besides the constructive notice to the bank, which has been supposed to arise from the knowledge of the fraud possessed by its officer, Miller. *But this knowledge was not acquired or used by Miller in the course of his agency as teller. It was involved in his own misconduct, and served only his own unworthy purpose* (italics ours). It would be as just to estop the plaintiff by the guilty knowledge of Johnson (its teller) as to affect the defendant by the secrets shut up in Miller's breast."

So that the final test of the case is, was Small, in drawing out the money in question, acting within the scope of his agency as president of the bank? This question, as said before, has been conclusively established by the jury under the charge of the Judge in the negative. But if it were not so, it is manifest that he was not so acting; (1) it was not the duty of Small as president to pay depositor's checks, and according to the evidence the bank performed such acts through its teller as a rule, and in this particular case payment was made by the teller; (2) Small in drawing out the deposit was acting as crediting depositor in adversary relation to the bank paying as debtor; (3) there was not the slightest evidence that the bank had any interest or profit in the transaction, except to discharge its duty, to honor its customer's checks in proper form; (4) Small's secret and fraudulent purpose to misappropriate the money was locked in his own breast, and could not have been disclosed without defeating his scheme to convert the money to his own use. Exceptions overruled.

The judgment of the Circuit Court is affirmed.