## GORHAM v. MUTUAL BEN. HEALTH & ACCIDENT ASS'N OF OMAHA.

### No. 4647.

Circuit Court of Appeals, Fourth Circuit.

Aug. 22, 1940.

J. C. B. Ehringhaus, of Raleigh, N. C. (W. H. Yarborough, of Louisburg, N. C., and Louis L. Davenport, of Nashville, N. C., on the brief), for appellant.

Francis E. Winslow, of Rocky Mount, N. C., and C. R. Wharton, of Greensboro, N. C. (Kemp D. Battle and Battle & Winslow, all of Rocky Mount, N. C., and Smith, Wharton & Hudgins, of Greensboro, N. C., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

PARKER, Circuit Judge.

This is an appeal from a judgment for defendant on a directed verdict in a suit on a policy of accident insurance. Defendant defended on four grounds: (1) That the death of insured was not the result of accident but of suicide; (2) that the notice and proofs of death required by the policy were not furnished; (3) that there was breach of the autopsy clause; and (4) that the suit was not seasonably instituted. Issues covering these various matters were submitted to the jury in accordance with the North Carolina practice, and verdict for the defendant was directed on each of them. As we are of opinion that the action of the court was clearly right on the issue as to suicide, we need not consider questions raised with respect to the others.

Insured was a dentist, 57 years of age, practicing at Rocky Mount, N. C. On the morning of March 9, 1933, he was discovered sitting in a chair in his office shot through the head. His right hand was hanging down and just beneath it lay his revolver, loaded all around except for one chamber which had been discharged. There was nothing whatever to indicate accidental discharge of the revolver. On the contrary the nature of the wound, which entered a little above and to the rear of the right ear, effectually negatived any theory of accidental discharge. Although the theory is advanced by plaintiff that the wound may have been inflicted by some person other than insured, there is nothing in the record before us to substantiate such theory. There was no evidence of struggle, no robbery or attempt at robbery is shown, and no motive of any sort is even suggested why anyone would have desired to take the life of the kindly, quiet and inoffensive man that insured was shown to have been. On the other hand, the evidence is that insured was much depressed as a result of financial conditions, that he was worried about his own finances and that he was laboring under the delusion, not justified by the facts, that he was faced with financial ruin. The conclusion that his death was the result of suicide was so clear at the time that it did not occur to any one to doubt it. Proofs of death were made to three life insurance companies; and in all of them plaintiff stated the cause of death to be suicide. While it is true that the plaintiff's mental condition was such that she may not have appreciated the content of these proofs, they were unquestionably prepared by persons friendly to her and must have expressed the only view as to the cause of death thought to be tenable.

Over a year after insured's death, plaintiff had his body exhumed and examined in an effort to prove from the nature of the wound that it was not self inflicted. The evidence thus obtained, however, instead of disproving suicide, establishes it so conclusively as to leave no room for reasonable men to doubt the fact. The physician performing the autopsy was of opinion from the nature of the wound that it was a contact wound, i. e., that the pistol was held against the head when it was fired. This was shown by the absence of branding or burning of the skin surrounding the wound, the presence of unexploded particles of powder in the brain where the bullet was found, and injury to the skull which could only be explained by the explosion within the skull of gases injected at the time of the shot. While there would be an absence of branding in the case of a shot made twelve inches or more from the head as well as in the case of one made with the muzzle of the pistol pressed against the head, the presence of unexploded particles of powder within the wound and the injury to the skull from exploding gases could only be explained on the theory of a contact shot. The expert witness relied on by plaintiff was not present at the autopsy and had never so much as seen the body of the deceased or examined the wound or the condition within the skull. His testimony was entirely hypothetical and devoid of probative value.

On these facts, we think that the trial judge properly directed a verdict for defendant on the issue of suicide. Home Life Ins. Co. v. Moon, 4 Cir., 110 F.2d 184; Jefferson Standard Life Ins. Co. v. Clemmer, 4 Cir., 79 F.2d 724, 103 A.L.R. 171. This result follows not only because of the views we entertain with respect to the nature of the presumption against suicide and the burden of proof in such cases,

but because the evidence taken as a whole establishes suicide so clearly as to leave no room to doubt what the fact is. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720. This is the test in the federal courts on motion to direct a verdict, and not the incidence of the burden of proof or the nature of the presumption against self destruction. In the federal courts, verdict may be directed in a proper case in favor even of the party upon whom the burden of proof rests. A. B. Small Co. v. Lamborn & Co., 267 U.S. 248, 254, 45 S.Ct. 300, 69 L.Ed. 597. And even if the presumption against suicide be accorded the weight of evidence, it must be considered along with the other evidence in the case; and, if upon the evidence viewed as a whole, there is no room for doubt as to the fact in issue, verdict must be directed. A. B. Small & Co. v. Lamborn & Co., supra; Gunning v. Cooley, supra.

 Plaintiff points to the fact that in a companion case in the North Carolina state courts, the evidence as to suicide was held for the jury. Gorham v. Pacific Mutual Life Ins. Co., 214 N.C. 526, 200 S.E. 5, rehearing 215 N.C. 195, 1 S.E.2d 569. It appears, however, that the Supreme Court of North Carolina did not pass upon the sufficiency of the evidence, but held that, this point having been conceded in the trial court, the defendant could not raise it on appeal. As this is a separate case, the parties are not bound by concessions made upon the trial in the state court, which were made solely with reference to that case. Furthermore, while according great respect to decisions of state courts in the matter of direction of verdicts, we are of opinion that this is a matter which is governed by federal practice, and not one wherein local law or local decisions are binding. It goes to the very essence of the exercise of the judicial function by the federal courts, and is in no sense a matter of local law. Herron v. Southern Pac. Co., 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857; Barrett v. Virginian R. Co., 250 U.S. 473, 39 S.Ct. 540, 63 L.Ed. 1092.

The case of Herron v. Southern Pac. Co., supra, was decided before the adoption of the Rules of Civil Procedure, 28 U.S.C. A. following section 723c, and while the Conformity Act was in full force and effect. A provision of the Constitution of Arizona required the defense of contributory negligence to be submitted to the jury, art. 18, § 5. The question presented was whether this provision forbade the direction of a verdict in a federal court on the ground of contributory negligence. It was held that the point was not ruled either by the Conformity Act or the Rules of Decision Act, 28 U.S.C.A. §§ 724, 725. The court, speaking through Chief Justice Hughes, said [283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857]:

"The controlling principle governing the decision of the present question is that, state laws cannot alter the essential character or function of a federal court. The function of the trial judge in a federal court is not in any sense a local matter, and state statutes which would interfere with the appropriate performance of that function are not binding upon the federal court under either the Conformity Act or the 'Rules of Decision' Act. Thus, a federal court is not subject to state regulations, whether found in constitutional provisions or in statutes, providing that the court shall not give an instruction to the jury unless reduced to writing, or that written instructions shall be taken by the jury in their retirement (Nudd v. Burrows, 91 U.S. 426, 441, 442, 23 L.Ed. 286; Lincoln v. Power, 151 U.S. 436, 442, 14 S. Ct. 387, 38 L.Ed. 224); or that the court shall require the jury to answer special interrogatories in addition to their general verdict (Indianapolis & St. Louis R. Co. v. Horst, 93 U.S. 291, 300, 23 L.Ed. 898); or that the court shall not express any opinion upon the facts (Vicksburg & Meridian R. Co. v. Putnam, 118 U.S. 545, 553, 7 S.Ct. 1, 30 L.Ed. 257); or charge the jury with regard to matters of fact (St. Louis, Iron Mountain & Southern R. Co. v. Vickers, 122 U.S. 360, 363, 7 S.Ct. 1216, 30 L.Ed. 1161); or shall not direct a verdict, where the evidence is such that a verdict the other way would be set aside (Barrett v. Virginian Railway Co., supra).

\* \* \*

"Where, in an action in a federal court to recover damages for personal injuries, contributory negligence or assumption of risk constitutes a defense, and, by reason of the facts being undisputed and of the absence of conflicting inferences, the evidence of contributory negligence or assumption of risk is conclusive and the question is one of law, the judge has the right and duty to direct a verdict for the defendant."

In Barrett v. Virginian R. Co., 250 U.S. 473, 476, 39 S.Ct. 540, 541, 63 L.Ed. 1092,

the court quoted the following statement of the rule from Bowditch v. Boston, 101 U.S. 16, 18, 25 L.Ed. 980: "It is now a settled rule in the courts of the United States that whenever, in the trial of a civil case, it is clear that the state of the evidence is such as not to warrant a verdict for a party, and that if such a verdict were rendered the other party would be entitled to a new trial, it is the right and duty of the judge to direct the jury to find according to the views of the court. Such is the constant practice, and it is a convenient one. It saves time and expense. It gives scientific certainty to the law in its application to the facts and promotes the ends of justice."

In Gunning v. Cooley, supra [281 U.S. 90, 94, 50 S.Ct. 233, 74 L.Ed. 720], the rule is thus stated:

"Issues that depend on the credibility of witnesses, and the effect or weight of evidence, are to be decided by the jury. And in determining a motion of either party for a peremptory instruction, the court assumes that the evidence for the opposing party proves all that it reasonably may be found sufficient to establish, and that from such facts there should be drawn in favor of the latter all the inferences that fairly are deducible from them. Texas & Pacific R. Co. v. Cox, 145 U.S. 593, 606, 12 S.Ct. 905, 36 L.Ed. 829; Gardner v. Michigan Central Railroad, 150 U.S. 349, 360, 14 S. Ct. 140, 37 L.Ed. 1107; Baltimore & Ohio R. Co. v. Groeger, 266 U.S. 521, 524, 527, 45 S.Ct. 169, 69 L.Ed. 419. Where uncertainty as to the existence of negligence arises from a conflict in the testimony or because, the facts being undisputed, fairminded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. Richmond & Danville Railroad v. Powers, 149 U.S. 43, 45, 13 S.Ct. 748, 37 L.Ed. 642.

"Where the evidence upon any issue is all on one side or so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury." '

A suicide case should be tried like any other case, and metaphysical reasoning about presumptions and burden of proof should not be permitted to obscure the real issue, as has been done in so many cases. If the evidence is conflicting, or if different inferences can reasonably be drawn from it, the case is for the jury. If, however, the evidence is so clear as to leave no room to doubt what the fact is, the question is one of law, and it is the right and duty of the judge to direct a verdict.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.