Myrtle McKirryher, b.n.f. *v.* Theron A. Yager.

May Term, 1941.

Re-argued, Special Term at Rutland, November, 1941.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed October 7, 1941.

Opinion on Re-argument filed February 3, 1942.

*Clayton H. Kinney* for defendant.

*Stanley L. Burns* and *Lawrence & O'Brien* for plaintiff.

BUTTLES, J. The plaintiff, a minor, brings this action by her next friend to recover damages for personal injuries received when she was struck by defendant's automobile on April 22, 1940, while crossing Columbian Avenue at or near the corner of Evergreen Avenue within the limits of the City of Rutland. Trial by jury resulted in verdict and judgment for the plaintiff and the case comes here on the defendant's exceptions. At the close of the evidence the defendant moved for a directed verdict upon the ground, in brief, that plaintiff had failed to show freedom from contributory negligence, and to the denial of this motion he has briefed an exception.

Columbian Avenue is the main thoroughfare running west from the City of Rutland to West Rutland. It is a part of route Number 4. The surface of the roadway is concrete, 18 feet wide, with no mark or joint indicating the division between the west and the east bound traffic lanes. On the north side there is a gravel sidewalk, but on the south side there is no sidewalk, the grounds of a Gulf gasoline and service station being immediately opposite the place of accident, adjoined on the west by the grounds of another gas service station. Along the entire front of the grounds of both stations is a gravelled driveway or yard, extending back, in all places, more than twenty feet from the edge of the concrete road surface. Evergreen Avenue does not cross Columbian but comes into it obliquely from the northeast. It has an asphalt surface with a concrete sidewalk on the southeasterly side and a graded walk or path on the northwesterly side.

The plaintiff lived with her mother and sister in the first house from Columbian Avenue, distant some 40 or 50 feet there-

from on the northwesterly side of Evergreen. Shortly before the accident she left her home with her sister Doris and started toward Columbian Avenue. At about the same time a Mrs. Gould started in the same direction from another entrance to the same house. Doris crossed Evergreen Avenue and went down to Columbian which she did not intend to cross, but the plaintiff and Mrs. Gould went down on the northwesterly side of Evergreen. Taking the evidence in the light most favorable to the plaintiff the jury might reasonably find that she walked down to the end of the graded walk or path and stopped a little west of a telephone pole and about five feet from the edge of the pavement on Columbian Avenue; that she looked to the east and waited until a west bound truck had passed in the northerly traffic lane; that she then started across Columbian Avenue, going diagonally to the west toward another pole on the other side of the street and at a point near the middle of the concrete she was struck by the left front headlight and left front of the radiator shell of defendant's east bound car with such force that she was thrown and caused to slide or roll for 84 feet or more along the road surface.

██ That she had passed the middle of the street and that the defendant was driving in his own traffic lane at the time of the accident is indicated by all of the evidence unless the contrary could properly be found from the testimony of Officer Morrissey that he found pieces of headlight glass about two feet northerly from what he judged to be the middle of the street. He also testified that 34 feet east of the most westerly glass he found a few more pieces north of the center of the road, and there were some pieces south of the center. Some ten minutes had elapsed after the accident before these observations were made, during which traffic had passed over the place. We may take judicial notice of such natural laws as are matters of common knowledge. *Goldberg* v. *Gintoff*, 112 Vt. 43, 46, 20 Atl. 2d. 114; *Wellman, Adm'r* v. *Wales*, 98 Vt. 437, 443, 129 Atl. 317. It is apparent that the force of the blow that shattered the headlight was such that pieces of glass were thrown to a considerable distance. The car itself would no doubt block pieces from flying to the rear, and the position of the plaintiff's person would quite likely divert the course of some of the pieces in a way that can

not be determined. Under the circumstances the evidence as to the glass was not sufficient to establish the north-south location of the point of impact.

That plaintiff, before starting to cross, looked to the east and waited for a west bound truck to pass is undisputed. She admits that there is no direct evidence that she looked to the west before this truck passed. It is not contended that she could have looked west immediately before starting to cross and have failed to see the defendant's approaching car, nor could this claim well be made since Mrs. Gould, who stood beside the plaintiff waiting for opportunity to cross, observed the defendant's car as it came around the bend, 400 feet away and watched it until the accident. Plaintiff argues, however, from a computation of speeds and distances, that she might have looked to the west before Mrs. Gould did so, when the defendant's car was not yet in sight, and have started across relying upon the assumption that the defendant would not exceed the local speed limit of 35 miles per hour. Upon these hypotheses she reaches the conclusion that she would have reached a place of safety had not that limit been exceeded. But the burden was upon the plaintiff to show her freedom from contributory negligence. *Colburn* v. *Frost,* 111 Vt. 17, 21, 9 Atl. 2d. 104; *Farrell* v. *Greene,* 110 Vt. 87, 90, 2 Atl. 2d. 194. Conjecture is no proof in him who is bound to make proof (*Wellman, Adm'r* v. *Wales,* 97 Vt. 245, 255, 122 Atl. 659 and cases cited), and this argument is based upon conjecture only and not upon evidence or legitimate inference from evidence.

There is no direct evidence that plaintiff, after starting across, looked to the west at any time that would have availed for her protection, but there is evidence tending to show the contrary. The defendant testified that the plaintiff came directly behind the truck into the path of his car, and her face was turned away from him. Mrs. Brunelle, who watched plaintiff from an upstairs window from the time she left the house until the accident, did not see her look to the west at any time. It appeared that plaintiff was talking with her sister Doris as they left their home together. Doris, who went down the southeasterly side of Evergreen Avenue, could not remember speaking to the plaintiff after the latter reached the end of the walk on the northwesterly side.

██ Plaintiff contends, however, that the testimony of Mrs. Gould tends to show that she was looking to the west after the truck had passed and that she saw defendant's car before it hit her. This witness, who had testified to watching the defendant's car until it struck the plaintiff, was asked: "As you saw Myrtle just at the instant she was struck or just the instant before then did she make any motion or action that you took notice of?" She replied, "Well, like as if she had started to run to get out of the way, just did one, just one step like as if she was undertaking to step out of the way, but it was too late." Later, in cross examination, the witness repeated practically the same assertion with the addition that plaintiff put out her hand as if to protect herself; that the last step witness saw her take took her right in front of the car; and that witness could not remember whether plaintiff was then faced toward her sister away from the direction from which the car came. It should be remembered that before taking the last step plaintiff was proceeding in the same direction in which the step was taken, with the momentum of a fast walk and that the left front headlight of defendant's car the center of which was 18 inches from the outside of the left fender, was shattered by the impact. Under the circumstances disclosed by the evidence the inference is not warranted that plaintiff looked for traffic approaching from the west at any time that could have availed for her protection.

██ The plaintiff relies upon the statement made in *Boyden, Adm'r* v. *Fitchburg R. R. Co.*, 72 Vt. 89, 94, 47 Atl. 409, 410, which reads thus:

> "It may be reasonably inferred from the circumstances, taking into consideration the disposition of persons to take care of themselves and avoid injury, that while waiting for the freight train to pass, and until they started along, the decedent and his companions looked and listened to guard against any west-bound train which might be approaching on the northerly track."

That case does not deny, but rather affirms at page 92 of 72 Vermont, at page 410 of 47 Atl., that the plaintiff had the burden

of proving freedom from contributory negligence and that the exercise of due care and prudence cannot be presumed. Without analyzing the circumstances from which it is there said that the inference referred to might be drawn it is sufficient to say that the circumstances disclosed by the evidence in the present case do not warrant such an inference, even if the disposition of persons to take care of themselves and avoid injury be given all due consideration.

 The plaintiff strenuously contends that the place where she started to cross was a regular cross walk at a street crossing but we do not decide whether this was so, as such decision is unnecessary for a determination of the issues here presented. The circumstances and dangers are always to be taken into account in determining what is due care or the evidence of it. *Aiken* v. *Metcalf*, 90 Vt. 196, 199, 97 Atl. 669; *Eagan* v. *Douglas,* 107 Vt. 10, 175 Atl. 222. The particular requirements of the prudent man rule vary with the circumstances and the law must be applied to each controversy as may be warranted by the facts. *Farrell* v. *Greene,* 110 Vt. 87, 91, 2 Atl. 2d. 194. Even at a regular crossing at an intersection a pedestrian is not freed from the necessity of complying with this rule and the fact that he starts to cross at such a place is merely a circumstance which may be considered in determining whether he has met the requirements of that rule.

 This Court has said in *Aiken* v. *Metcalf*, 90 Vt. 196, 199, 97 Atl. 669, quoting from *Undhejem* v. *Hastings,* 38 Minn. 485, 38 N. W. 488, that it cannot be laid down as a rule that in all cases without regard to the extent to which the street is usually traveled, it is negligence for one on foot to cross it or walk in it, without looking in each direction to see if a vehicle may be approaching. Nevertheless, the circumstances may be such that it is negligence for a pedestrian, even at an intersection or while using a regular cross walk to fail to look or look effectively for approaching traffic. Among cases so holding may be cited *Finkle* v. *Tait,* 55 Cal. App. 425, 203 Pac. 1031; *Ogden* v. *Lee,* 61 Cal. App. 493, 215 Pac. 122; *O'Brien* v. *Bieling,* 267 Pa. 383, 110 Atl. 89; *Twinn* v. *Noble,* 270 Pa. 500, 113 Atl. 686; *Halzle* v. *Hargreaves,* 233 Mich. 234, 206 N. W. 356; *Russo* v. *City of Grand Rapids,* 255 Mich. 474, 238 N. W. 273; *L'Heureux* v. *Desmarais,* 89 N. H. 237, 197 Atl. 327.

It is immaterial whether the plaintiff was attempting to cross between intersections or at a regular cross walk, because even if it be assumed to be a regular cross walk it is clear that under the circumstances here existing, and especially since it does not appear that there were any safeguards other than her own perception of traffic upon which the plaintiff did or could rely, that she was guilty of contributory negligence in failing to look to the west for traffic, at any time that could have availed for her protection, unless that conclusion is prevented by the fact that she was not of full age. But she was sixteen years old and a pupil in junior high school. She had lived within 100 feet of the place of the accident for about six years and had occasion to cross there almost daily. She of course knew that Columbian Avenue was a main thoroughfare and must have been perfectly familiar with all the surroundings and with the danger in crossing that street from traffic in both directions. Applying the standard of care required of infants as set forth in *Johnson's Adm'r* v. *Rutland R. R. Co.*, 93 Vt. 132, 137, 106 Atl. 682, and in *Eagan* v. *Douglas, supra,* we hold that under the circumstances the plaintiff did not exercise the care and prudence reasonably to be expected from a person of her age, capacity, intelligence and experience in similar circumstances, and that she was guilty of contributory negligence as a matter of law.

Defendant's motion for a directed verdict should have been granted and consideration of his other exceptions become unnecessary.

*Judgment reversed and judgment for the defendant to recover his costs.*

## ON REARGUMENT

BUTTLES, J. After the foregoing opinion was handed down the plaintiff, by leave of the Court, moved for a reargument. Several grounds for the motion were stated therein and briefed and argued by the plaintiff, all of which were carefully considered. The result was that reargument was ordered and had upon one ground only, which was as to the effect that should be given to the evidence regarding the glass found in the road, it being the plaintiff's contention that from this evidence a jury

would be warranted in finding that the plaintiff was on the north side of the middle of the street when hit by defendant's car, and that for that reason she was free from contributory negligence.

We need not discuss the other grounds of the motion further than to say that if it be conceded that the plaintiff *may* have looked to the west immediately before starting to cross the street and her view of the defendant's car may then have been obstructed by the receding truck ·it is immaterial, because there is no evidence that she did so look.

The only evidence regarding the location of the pieces of glass in the roadway comes from Officer Morrissey whose testimony is summarized in the opinion. He also testified that he found the plaintiff lying on her back, unconscious, in the center of the road, and that she lay 84 feet from the most westerly glass about which he testified, and fifty feet from the pieces farther east. Plaintiff contends that after the glass was broken it would shoot forward in the direction in which the car was moving at the speed that it derived from the motion of the car and that when it was eventually drawn to the ground by gravity the place where it was found would be some indication of the point, relative to the middle of the road, at which the force was applied that broke it. However this might be if the glass were affected only by its own momentum and by gravity it is apparent that here there was another factor that cannot be overlooked. The fact that the headlight was broken by some part of the plaintiff's person coming in contact with its front surface, either squarely or at an angle, suggests that the course that the broken glass, or some part of it, would otherwise have taken must have been interfered with thereby. There is nothing to indicate the extent or effect of such interference. The evidence discloses nothing as to how the contact occurred except that plaintiff was struck by the headlight and the radiator shell on the left side of the car, and that the direction in which the plaintiff was travelling formed an obtuse angle with the direction from which the car came.

That some force or object besides gravity and momentum determined the position of the glass in the road, or of some part of it, is also demonstrated by the undisputed fact that a space of 34 feet separated the two deposits about which the officer testified.

346

The time required for the glass to fall to the ground by force of gravity, if not interfered with in any way, would not be affected by any horizontal motion that the glass might have or by the speed of such motion. That is to say the time required for the glass to fall from the headlight to the ground, under those conditions, is definite and fixed, and the distance that the glass would move forward during that time would be determined by its speed. On her motion and the argument thereof plaintiff contended that the speed of defendant's car at the time of the impact or just prior thereto was 45 miles per hour, and that when she was struck plaintiff was ten feet west of where the most westerly glass was found. She now says in reargument that there is evidence from which it might be found that she was struck while distant as much as 24 feet from that point; that the speed of the car was not more than 25 miles per hour and was substantially retarded when the car hit the plaintiff; and that the speed of the glass when it left the headlight was only enough to carry it to the place where the first glass was found. But if it be conceded that there is evidence from which these facts might reasonably be found as the plaintiff now contends, the theory that she evolves therefrom is inconsistent with the presence of glass on both sides of the middle of the road, 34 feet east of the first glass and fifty feet west of where the plaintiff lay in the road if both deposits of glass left the headlight at the same time. There is no evidence of the extent to which or the direction in which glass may have been deflected by the interference of plaintiff's body with its flight.

There is considerable confusion in the books as to the evidence necessary to send a case to the jury. It has been said in our own cases and elsewhere that if there is *any* evidence tending to support a plaintiff's case it must go the jury. See *Smith* v. *Town of Franklin*, 61 Vt. 385, 387, 17 Atl. 838; *Woodsville Guaranty Sav. Bank* v. *Rogers*, 82 Vt. 468, 470, 74 Atl. 85. The rule has been variously stated to be that a mere scintilla of evidence is insufficient, that something more than a scintilla is necessary, and that substantial evidence is required to make a case for the jury. Other expressions have been used.

These variations are discussed in *Wellman, Adm'r* v. *Wales*, 98 Vt. 437, 447, 448, 129 Atl. 317, 322, and the present

rule in Vermont is there stated and explained quite fully. The late Chief Justice Powers there says, omitting citations of authorities: ''The orthodox form of expression has come to be, with us, that the evidence must fairly and reasonably tend to establish the essential facts of the plaintiff's claim to entitle him to go to the jury. * * * This expression, rightly understood, means that, not only must there be some evidence tending to support the claim, but, also, that it must be of such quantity and character as to justify a jury, acting reasonably, to predicate a verdict thereon in favor of the party having the burden of proof. The question is not whether there is any evidence, merely, but whether there is any evidence on which a jury can reasonably and properly find such a verdict. * * * A motion for a directed verdict is to be granted whenever it would be the duty of the court, in the exercise of a wise judicial discretion, to set aside a contrary verdict, if rendered. Though there is some evidence in the record tending to establish the claim, if the countervailing evidence so preponderates over it that it would be an abuse of the trial court's discretion to refuse to set aside a plaintiff's verdict founded thereon, a motion for a defendant's verdict may, without error, be granted.''

Tested by the rule as thus set forth the evidence in this case regarding the glass was not sufficient, in our opinion, either by itself or in connection with any other evidence in the case, to warrant submission of the question of plaintiff's contributory negligence to the jury.

*No change or modification of the previous order is required as a result of reargument. Let full entry go down.*