**McSWEENEY v. PRUDENTIAL INS. CO. OF AMERICA.**

No. 4910.

Circuit Court of Appeals, Fourth Circuit.

June 4, 1942.

Thomas M. Boulware, of Barnwell, S. C. (George Warren, of Hampton, S. C., on the brief), for appellant.

Robert McC. Figg, Jr., of Charleston, S. C., for appellee.

Before PARKER and DOBIE, Circuit Judges, and PAUL, District Judge.

PARKER, Circuit Judge.

This suit was instituted in the court below to cancel a life insurance policy on the ground of fraudulent representations contained in the application. The insured died while the suit was pending and an amended answer filed by the beneficiary asked recovery on the policy. The answer denied fraud and pleaded waiver of the misrepresentations by reason of knowledge of the facts on the part of the company's medical examiner. The case was referred to E. W. Mullins, Esq., as special master, who filed an able and comprehensive report finding the facts fully and applying the law in the light of the decisions of the Supreme Court of South Carolina. The findings and conclusions of the special master were approved and adopted by the court below, and judgment was entered thereon denying recovery on the policy and ordering its cancellation upon return of the premiums. From this judgment the beneficiary has appealed.

The special master found that the misrepresentations for which cancellation of the policy was asked were material to the risk, were relied on by the company in issuing the policy and were false to the knowledge of the insured when they were made. He concluded that they constituted constructive fraud for which the policy might be avoided, even though, as he found, the insured had no conscious design or intent to defraud the company. He found also that the knowledge of the medical examiner relied upon as waiver was acquired more than two years prior to the examination, when the examiner was acting as insured's physician and not as the company's agent, that there was nothing to show that he had the information in mind at the time of the examination or communicated it to the company and that the company was not chargeable therewith. The questions raised by the appeal relate to the correctness of these findings and conclusions.

The facts are that in January, 1935 the insured, a man 44 years of age, made application to the company for a policy on his life in the sum of $5,000, which was issued in the month of February following. In the application, which was attached to and made a part of the policy, he gave the following answers to questions relating to blood pressure and consultation with physicians, viz.:

"7A. Have you ever had albumin, blood or sugar in your urine, or had abnormal blood pressure? (If yes, give particulars including treatment in space below.)

"No.

"9-A. Have you been attended by a physician during the past three years? Give dates, complaints, doctors' names and addresses.

"Yes. Malarial fever, 1932. F. H. Boyd, Allendale, S. C.

"Details of 6, 7, 9, 10 should be given below. Include dates (month and year), nature of illnesses, time disabled and results, attending physicians' names and addresses and names of hospitals, sanitaria, or other institutions, if any.

"Malarial fever, 1932. Complete recovery. F. H. Boyd, M.D., Allendale, S. C.

"10-B. Do the answers to questions 6, 7, 8 and 10-A, with details given in space below, constitute a complete statement of all your illnesses, surgical operations and sojourns in hospitals, sanitaria and other institutions?

"Yes."

These answers were false and must necessarily have been known to insured to be false at the time they were made. As a matter of fact he had arteriosclerosis and high blood pressure in 1932, had suffered what was evidently a slight brain hemorrhage which resulted in a numbness of the face, arm and leg on his left side and thickness of the tongue, had consulted Dr. Levy, an expert of Augusta, Georgia, with reference thereto on three different occasions in October, November and December, 1932, had been told by Dr. Levy that he had high blood pressure and had been given treatment and put on a diet which he had followed rigorously. The condition of insured, effectually concealed by the false answers contained in the application, resulted in a stroke of paralysis in December, 1935, which completely disabled him and led to the discovery of the facts upon which the suit for cancellation is based.

The examining physician for the company was the Dr. Boyd referred to in the answers above quoted. He was an elderly

man of high character with a large practice and other business. He was the family physician of insured, and in 1932 had referred insured to Dr. Levy to be examined and had received a report of the examination. He wrote the answers to the questions in the application, which was signed by insured; but there is nothing to show that he did not correctly set down the answers given by insured or that he had in mind at the time the information which he had received from Dr. Levy more than two years before with reference to insured's condition.

On these facts we think that the lower court correctly held that the policy was avoided as a result of the false representations contained in the application. Whether termed constructive fraud or not, there can be no question but that, under the law of South Carolina, such false representations, knowingly made by an applicant for insurance with respect to material facts necessarily within his knowledge, as distinguished from matters of opinion or matters as to which there is possibility of mistake, constitute fraud as matter of law for which the policy may be cancelled. Johnson v. New York Life Ins. Co., 165 S.C. 494, 164 S.E. 175, 177. In that case, as here, the fraud alleged consisted in false representations as to consultations with physicians. It was proven in the case, it is true, that there were also false representations as to use of intoxicants; but the opinion points out that the pleadings contained no allegation of false representation with respect to these and that the decision was based upon the false representations as to consultation with physicians. The court said that in order to defeat the policy it would be necessary to show that the statements in the application relied on in the pleadings were untrue, that their falsity was known to applicant, that they were material to the risk and relied on by the insurer, and that they were made with intent to deceive and defraud the company. After stating that the question of the existence of fraud was ordinarily for the jury, the court held that on the facts there verdict should have been directed for the company, reversed judgment for the plaintiff and directed that judgment for the company be entered. The court pointed out that the false representations with respect to consultation with physicians were material to the risk and, with respect to the necessary intent, had the following to say: "Finally, the intent with which representations or

misstatements of facts are made is a thing that is locked up in the heart and consciousness of the applicant. It may be shown by his express words, or it may be deduced from his acts and the facts and circumstances surrounding the making of the misrepresentations, though on this question the mere signing of the application containing the answers alleged to be false is not conclusive. Huestess v. [South Atlantic Life] Insurance Co., 88 S.C. 31, 70 S.E. 403. Under the circumstances of this case, we do not see how any reasonable inference as to the applicant's intent in making his answer to the questions under consideration could be drawn from the undisputed facts other than that he deliberately intended to deceive the company and thereby procure the insurance."

To the same effect is the holding in the more recent decision of Murray v. Metropolitan Life Ins. Co., 193 S.C. 368, 8 S.E. 2d 314, 317. In that case an insured had falsely represented in an application for reinstatement that he had not been treated by a physician, whereas the fact was that he had been so treated for tuberculosis. While distinction was drawn by the court between the original application for the policy and the application for reinstatement, this related only to the statutory requirement that the former be attached to the policy if the company was to rely on misrepresentations therein contained. There was no question but that the false answers in the application for reinstatement were to be treated as representations and not warranties, and the court held that their falsity avoided the policy and that verdict should have been directed to that effect, saying: "These representations, as shown by the evidence, were false, were material to the risk, were acted upon by the insurer, and were known by the insured to be false. The representations related to facts within the knowledge of the applicant, and not within the knowledge of the company, and were material. In such case the applicant must answer truthfully. As was said in Mutual Life Ins. Co. v. Leaksville Woolen Mills, 172 N.C. 534, 90 S.E. 574, 577: '* * * The purpose of such questions is twofold: First, to elicit information, which the company regards important; second, to give the sources from which the company may obtain further information. The parties themselves have made these questions and answers material. Their materiality depends, not only upon their own purport, but upon the fact that the contract-

ing parties have agreed that the written application containing these questions and answers is the basis upon which the contract of insurance shall be made or refused.'"

The case of Mutual Life Ins. Co. v. Leaksville Woolen Mills [172 N.C. 534, 90 S.E. 577], cited and quoted from above, was a case involving false representations in an application for a policy, not in an application for reinstatement; and the Supreme Court of North Carolina, in the course of the opinion therein, states very clearly the rule which we understand to be the rule recognized in South Carolina as well as in North Carolina. The court said: "Nothing herein contravenes the well-settled doctrine that where a question is asked, which must be necessarily answered by an opinion, the mistake of the applicant in answering such question, made honestly and in good faith, will not avoid the policy. This is not so, however, where the questions asked relate to facts within the knowledge of the applicant, and not within the knowledge of the company, and where the questions and answers are material. In such case the applicant must answer truthfully."

■ To like effect is the rule laid down by this court in Atlantic Life Ins. Co. v. Hoefer, 4 Cir., 66 F.2d 464, 466, a case from South Carolina very similar to the case at bar, in which it is said that "a material representation, known by the insured to be untrue, invalidates a life insurance policy without further proof of actual conscious design to defraud." See also New York Life Ins. Co. v. McCurdy, 10 Cir., 106 F.2d 181, and Columbian Nat. Life Ins. Co. v. Rodgers, 10 Cir., 93 F.2d 740, applying the law of Kansas; Guardian Life Ins. Co. v. Clum, 3 Cir., 106 F.2d 592, and Equitable Life Assur. Soc. v. Saftlas, D.C., 38 F. Supp. 708, applying the law of Pennsylvania; Great Northern Life Ins. Co. v. Vince, 6 Cir., 118 F.2d 232, applying the law of Michigan; and Metropolitan Life Ins. Co. v. Madden, 5 Cir., 117 F.2d 446, 451, applying the law of Florida. These decisions are illuminating in that they apply the law of states which, like South Carolina, require an intent to defraud as well as falsity with respect to a material representation as a basis for avoiding the policy. In the case last cited Judge Hutcheson, speaking for the Circuit Court of Appeals of the Fifth Circuit, clearly states the rule applicable where there is a material false statement which is false within the knowledge of the applicant making it. He says:

"The answer sought to be elicited by the question was an answer of fact and not of opinion. If it was not material, its falsity was wholly unimportant, but if, as here, it was material as matter of law, and, as here, the answer was, and was known to be, untrue, its giving prevented recovery on the policy without regard to whether the answer was given with a conscious, fraudulent purpose to deceive. This is not to say that false is not sometimes a word of double meaning as in connection with Question and Answer 11, calling for an opinion whether applicant had had any ailment or disease of the stomach or intestines. In such cases whether the answers were given in good faith, that is, whether they expressed the honest opinion of the answerer or were dishonest opinions given with intent to deceive, is material. * * *

"Nor is it to say that in cases of misstatements of fact where there is a dispute of fact as to whether the misstatements were knowingly made or were the result of oversight or inadvertence, a jury issue could not be made out. But it is to say as to Question 13, the purpose of which was to reveal medical consultations and treatments of the applicant, so that the insurer might have the benefit of this information as a basis for further inquiries in determining his insurability; that it was in law material; that the answer to it, if given truthfully, was likewise material; that the evidence admits of no other conclusion than that, whether or not fraudulently intended, it was deliberately and knowingly made; and that because of this misrepresentation, the judgment may not stand. Columbian National Life Ins. Co. v. Rodgers, 10 Cir., 93 F.2d 740, and authorities cited in note 7, supra.

"This is settled law in New York, where it is claimed that one of the policies became a contract, and in Florida, from which this case comes."

■■ Some confusion is introduced into the consideration of the case at bar because the special master found that the evidence was insufficient to show that the insured had a conscious design or intent to defraud the company, although finding that the answers of insured with respect to high blood pressure and to his not having consulted any other physician than Dr. Boyd were material, were untrue and were known by him to be untrue when made.

The finding of the special master as to the absence of conscious design to defraud is shown by his report to have grown out of the distinction drawn by him between moral fraud and constructive fraud. We do not find it necessary to explore that distinction. We think it clear that fraud of the sort required to avoid the policy is shown to exist where there is a false representation as to a material matter, which is false to the knowledge of the applicant at the time it is made and which is made for the purpose of being acted on by the company. Where these facts appear, it is idle to inquire further whether there was intent to defraud; for the intent to defraud in such case is the intent to obtain the policy by the false representations. Any question as to whether the insured may honestly have thought that he had recovered from the serious ailment from which he knew that he had suffered and for which he had consulted a physician is beside the point. Inquiries were addressed to him with regard thereto as a basis for determining whether the policy should be issued; he knew that his answers would be taken into consideration and acted on by the company; and, when he made false answers which he knew to be false as a basis for such action, fraudulent intent in making them may reasonably be inferred. Smith v. Vandiver, 149 S.C. 540, 147 S.E. 645. His good faith, under such circumstances, is not a matter for speculation, but must be determined from a consideration of what he has deliberately done. Nettles v. Sottile, 184 S.C. 1, 191 S.E. 796, 805.

■ Decisions of the South Carolina court relied on by appellant holding that under circumstances quite different from those involved here the issue of fraud was for the jury, are not in point. In the first place, the question as to whether a case should be submitted to the jury or verdict directed is a matter of federal practice as to which local decisions are not controlling, even if this were an action at law. Gorham v. Mutual Benefit Health & Accident Ass'n, 4 Cir., 114 F.2d 97, 99. While the cases relied on are authority for the position that a fraudulent intent in addition to the false representations there shown is necessary to establish fraud, they are not authority for the position that fraudulent intent is not to be inferred from the making of false representations which are false within the knowledge of the person making them and are material and made to be acted on; and they do not militate against the holding of the Johnson case to the effect that fraudulent intent must be inferred from such representations when no other conclusion can reasonably be drawn from them. In the second place, the case was one heard in equity and not at law; and this court has full power to review the findings of fact. We entertain no doubt upon the evidence appearing in the record that the making of the false answers in the application as to matters inquired about, which were false to the knowledge of the applicant when making them, established fraud vitiating the policy within the holding of the Johnson case.

Applicant is shown by the evidence to have been a man of intelligence and the publisher of three rural newspapers. He must have known the significance of the numbness in his left side and the thickness of tongue which accompanied it. He consulted a specialist, was told that he had abnormally high blood pressure, and took the matter so seriously that he took off weight too rapidly as a result of following the diet prescribed for him. Nevertheless he entirely failed to disclose these serious matters in response to the questions in the application making specific inquiry with regard to them, although he did mention treatment by a different doctor for a minor ailment. He was uninsurable and must have known that he was uninsurable; and if he had truly disclosed the facts as to which specific inquiry was made, he would never have obtained the policy. He obtained it by false answers, known to him to be false, which concealed his true condition. As said in the Johnson case, "the undisputed facts can reasonably give rise to only one inference, namely that the policy was procured by fraud."

■ We approve the finding of the master, confirmed by the District Judge, to the effect that, at the time of Dr. Boyd's examination of the insured, he did not have in mind the information furnished him by Dr. Levy more than two years before, and that the company is not chargeable therewith. In view of the high character of Dr. Boyd and the many matters demanding his attention, it is reasonable to assume that he did not have in mind, when writing down the answers of insured, information which showed the answers to be false. If he did not, the company is not chargeable with notice with regard thereto. In South Carolina the rule that knowledge or notice on the part of the agent is

treated as notice to the principal is based on the duty of the agent to communicate all material information to the principal and the presumption that he has done so. Knobelock v. Germania Savings Bank, 50 S.C. 259, 27 S.E. 962. And where this rule prevails, it is well settled that "generally speaking, a principal is chargeable with knowledge which his agent acquired before the commencement of the relationship only when that knowledge can reasonably be said to be present in the mind of the agent while acting for the principal, or where he had acquired it so recently as to raise the presumption that he still retained it in mind." 2 Am.Jur. 294; In re Distilled Spirits, 11 Wall. 356, 20 L.Ed. 167; notes 4 A.L.R. 1615, 38 A.L.R. 823.

A finding that Dr. Boyd had in mind the facts showing that the answers in the application were false would make him a party to the fraud practiced on the company; and, in such case, the company would not be charged with his knowledge. 2 Am.Jur. 299; Keeton v. Jefferson Standard Life Ins. Co., 4 Cir., 5 F.2d 183, 187; Zeidel v. Connecticut General Life Ins. Co., D.C., 44 F.2d 843. We agree with the master, however, that it is reasonable to assume that the doctor did not have in mind the information which he had received and was not a party to the fraud.

For the reasons stated, the decree appealed from will be affirmed.

Affirmed.