**PIERCE CONSULTING ENGINEERING CO. and Henry Friedman, Assignee, Plaintiff,**

v.

**CITY OF BURLINGTON, VT., Defendant and Third-Party Plaintiff-Appellant,**

**CENTURY INDEMNITY CO., Third-Party Defendant-Appellee.**

No. 197, Docket 23313.

United States Court of Appeals Second Circuit.

Argued Feb. 18, 1955.

Decided April 4, 1955.

Rehearing Denied April 29, 1955.

---

See also, D.C., 15 F.R.D. 23.

Bernard J. Leddy, Burlington, Vt., for defendant and third-party plaintiff.

Edmunds, Austin & Wick, Burlington, Vt. (Hilton A. Wick, Burlington, Vt., of counsel), for third-party defendant.

Fayette & Deschenes, Burlington, Vt., F. Elliot Barber, Jr., Brattleboro, Vt., Hale & Dorr, Boston, Mass., for Pierce Consulting Engineering Co. and Henry Friedman, Assignee.

Before FRANK and MEDINA, Circuit Judges, and BRENNAN, District Judge.

BRENNAN, District Judge.

Appellant challenges on this appeal the sufficiency of the evidence to warrant the submission of the question of its fraud to the jury.

The details of a rather complicated litigation may be eliminated in part since the trial judge, with the approval of the litigants, directed that a single phase of the total litigation be determined at the trial involved in this appeal. Thereupon the issue was limited to a determination of the existence and validity of a contract, wherein the Century Indemnity Co. became a surety to the City of Burlington, Vermont, as obligee for the performance of a contract made by The Pierce Consulting Engineering Co. with the City of Burlington.

In Sept. 1951 the Pierce Co. was employed by contract to prepare and furnish engineering services and plans to the City of Burlington in connection with the erection of a new electrical generating station. This contract was modified by a writing of April 1952 which in effect accelerated payments which would become due to the Pierce Co. On March 18, 1952 the Pierce Co. was also employed by written contract to furnish plans and specifications to the City for the construction of electrical distribution facilities. None of the three contracts by their terms provided for a definite completion date or schedule of performance. Performance by Pierce was not secured by bond or otherwise.

About May 1952 the City took its first action directed to requiring that the Pierce Co. furnish a bond for the performance of the above-mentioned contracts. The details of the further negotiations, conversations and writings relative to the procurement of such bond are unnecessary. It is sufficient to say that the City contends that a contract came into existence by reason of an offering letter of Aug. 18, 1952 from an agent of Century to the City and a letter of acceptance by the Board of Light Commissioners, dated Aug. 29, 1952.

The existence of a contract is denied by Century but it is not urged upon this appeal that error occurred in any manner in the submission of the question of the existence of a contract to the jury. No exception was taken to the charge relative thereto and same therefore became the law of the case. No error being claimed, we do not examine same. It should be stated that a bond was never formally executed.

About Sept. 26, 1952, in accordance with the resolution of the Board of Aldermen, no further payments were made by the City of Burlington to the Pierce Co. who discontinued the work provided in the contracts and this litigation followed.

Upon the trial, the City asserted the existence and validity of the contract, above referred to. As above stated, Century denied the existence of the contract and in substance alleges that in any event the contract was voided by the fraud of the City by reason of its failure to disclose to Century the insolvency of the Pierce Co. and the substantial default by Pierce in the performance of the contract. The trial court submitted the question of the existence of the contract and the question of fraud to the jury but directed "Your verdict will simply be that there is a suretyship obligation or that there is not". The jury found that there was no obligation on the part of Century to the City. We therefore have no knowledge as to whether the jury found that in fact no contract existed or that such a contract did exist but that it was voided because of the fraud of the City.

No exception was taken to the charge of the court as it related to the fraud contention, although the City objected to the submission of that question to the jury upon the ground that there was no evidence that Pierce was in fact insolvent or that the City had knowledge of such insolvency and that there was no evidence to justify a fraud finding. It appears after the verdict, motion was made to set it aside upon the same ground. The motion was denied.

Both litigants apparently conceded the correctness of the charge as made. The

action of the trial court in determining the sufficiency of the evidence is the only issue raised here. We may then assume without deciding that the City was obligated under the circumstances to disclose its knowledge of the contractor's insolvency and default as clearly defined in the charge.

■ The City of Burlington has appealed from the final judgment which makes all errors reviewable. Portman v. American Home Products Corp., 2 Cir., 201 F.2d 847, including the discretion of the trial judge exercised in denying a motion for a new trial. Caloric Stove Corp. v. Chemical Bank & Trust Co., 2 Cir., 205 F.2d 492.

■ Federal jurisdiction in this case is based upon diversity of citizenship. In such a case, this court has held that the matter of the sufficiency of the evidence to take the case to the jury is to be determined in accordance with the State law. Gutierrez v. Public Service Interstate Transp. Co., 2 Cir., 168 F.2d 678. In Prudential Insurance Co. of America v. Glasgow, 2 Cir., 208 F.2d 908, at page 912, we made the same assumption but see, e. g., Herron v. Southern Pacific Co., 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857; Diederich v. American News Co., 10 Cir., 128 F.2d 144; Ettelson v. Metropolitan Life Ins. Co., 3 Cir., 137 F.2d 62; Gorham v. Mutual Benefit Health & Accident Association, 4 Cir., 114 F.2d 97, 99; McSweeney v. Prudential Ins. Co. of America, 4 Cir., 128 F.2d 660, 664; 5 Moore Federal Practice (2d ed.) Secs. 38.09, 38.10. Cf. Zauderer v. Continental Casualty Co., 2 Cir., 140 F.2d 211, 214.

While the Vermont rule is referred to in some detail below, actually it is apparent that the result here, as in the Gutierrez and Prudential cases supra, would be the same were the federal rule applied.

■ The rules as to the sufficiency of evidence to make a jury question, as promulgated by the courts of Vermont, appears to have its basis in the decision of Wellman v. Wales, 98 Vt. 437, 129

A. 317. Like all such rules, it lacks the precision of a formula but may be expressed as requiring evidence of a quality which would justify a jury acting reasonably, in returning a verdict in favor of the party having the burden of proof. McKirryher v. Yager, 112 Vt. 336, 24 A.2d 331.

The existence of such evidence to justify findings of (a) insolvency of Pierce, between Aug. 18, 1952 and Aug. 29, 1952, referred to in the charge as the critical dates; (b) knowledge of such insolvency by the City and (c) substantial default of Pierce in its contract obligations is therefore necessary if this verdict is to stand. We find that the record is lacking in essential evidence as to the matters mentioned above.

■ As far as the evidence goes in establishing the insolvency of the Pierce Co., it rests upon a hearsay statement in June of 1952 to the effect that Pierce was not paying his bills as well as he did. In June 1952 the City attorney discussed outstanding debenture obligations of the Pierce Co. with one of its former employees and also discussed the employee's claim against Pierce. In June 1952 the mayor of the City was told that it would be good business for the City to obtain a performance bond. About the same time, or slightly prior thereto, an alderman of the City prepared a resolution that a bond be obtained and he thereafter received Dun & Bradstreet's reports concerning the contractor's credit standing. A subsequent resolution was presented on Aug. 25th. The credit reports are not in evidence and their contents may not be a subject of speculation. In the early part of October 1952, it appears that the City authorities for the first time were directly advised to the effect that Pierce could not meet its financial obligations. This was over a month too late to afford any basis for either a finding of actual insolvency or knowledge on the part of the City within the material period of time.

■ No reason seems apparent why the insolvency of Pierce, if such was a fact, should be left for inference. Di-

rect proof appeared to be available. The only bit of such proof offered was the testimony of a vice-president of Pierce to the effect that the corporation's financial condition, to his knowledge, was all right in Aug. 1952. Defendant had the burden of proof and evidence is weighed in the light of the power of a party to produce it. At best the evidence here tended to establish only a suspicion of financial instability and a measure of apprehension on the part of the City officials. It is not enough, as shown by the quotation from the Vermont case of Green Mountain Mushroom Co. v. Brown, 117 Vt. 509, 95 A.2d 679, 688. "Where probative force of evidence is so weak that it raises only a surmise or suspicion of existence of the fact sought to be established, the evidence is no 'evidence' at all, in legal contemplation, and will not support a finding which comprehends the existence of the disputed fact".

Holding as we do that no sufficient evidence was offered to establish the insolvency of the Pierce Co., it follows without laboring the question that evidence is also lacking to show knowledge on the part if the City of such insolvency.

■ The question of a substantial default on the part of the contractor as of Aug. 29, 1952 was dealt with by the trial court in a single paragraph of the charge. The question was submitted to the jury but it was pointed out to them that they should take into consideration that the performance of the contract was not controlled by a work schedule only to the extent it was to be completed by 1954. There is some evidence to the effect that plans and specifications, which are a part of the contractor's obligation, were not available at the times when same were requested but there is no evidence at all to indicate that this criticism remained uncorrected. There is no evidence of the quality required to warrant the finding of a substantial default.

The parties have had their day in court insofar as the question of fraud is concerned. They have each offered their evidence to support and meet that contention. We find that such evidence is deficient in probative force as a matter of law and it was error to submit such question to the jury. The judgment is therefore reversed, the defense of fraud is dismissed and the action is remanded for a new trial of the question of the existence of a contract.

On Petition for Rehearing.

PER CURIAM.

 We held that the evidence offered was insufficient to warrant the submission of the question of fraud to the jury. It follows that the exceptions to the charge, taken by Century and now made available to us for the first time, would not in any way affect our decision.

Petition denied.