**PRESSER ROYALTY COMPANY,**
Plaintiff-Appellant,

v.

**CHASE MANHATTAN BANK,**
Defendant-Appellee.

No. 131, Docket 25826.

United States Court of Appeals
Second Circuit.

Argued Nov. 10, 1959.

Decided Dec. 15, 1959.

Bernard Bienstock, New York City, for plaintiff-appellant.

A. Donald MacKinnon, New York City (Edward J. Reilly, Jr. and Milbank, Tweed, Hope & Hadley, New York City, on the brief), for defendant-appellee.

Before SWAN, MAGRUDER and LUMBARD, Circuit Judges.

LUMBARD, Circuit Judge.

The question for decision is whether the trial judge erred in dismissing for insufficiency of evidence the suit of Presser Royalty Company to recover a broker's commission from the Chase Manhattan Bank, the purchaser on behalf of various pension trusts, of a mineral interest in certain Texas oil lands. Jurisdiction was founded upon diversity of citizenship. We find that the trial judge's dismissal of the complaint is fully supported by the record, and we affirm the judgment.

The amended complaint alleged the Bank's contractual obligation to pay plaintiff a commission of one and one-half per cent of the purchase price of the mineral interest, if at any time and upon any terms the sale were consummated; alternatively it sought recovery in *quantum meruit* for the labor and services rendered by the plaintiff to the defendant. At the conclusion of its case plaintiff was granted leave to amend its complaint to allege in the alternative the existence of a brokerage contract between plaintiff and defendant under the terms of which the plaintiff was entitled to compensation only if it were the procuring cause of the purchase, that the defendant terminated this contract in bad faith, and that the plaintiff was thereby prevented from concluding the negotiations between the defendant and the vendors of the mineral interest in question. Upon each claim plaintiff sought damages of $63,750. Defendant's answer controverted these allegations and in addition set up two affirmative defenses.

The evidence, viewed most favorably to the plaintiff, tended to establish the following: In October 1955 Joseph Humphrey, acting as agent of Frank and Eloise Waters, owners of a one-eighth interest in the Dora Roberts Ranch in Midland and Ector Counties, Texas, offered an oil royalty in one-sixteenth of the ranch to Standolind Oil & Gas Company, a subsidiary of the Standard Oil Company of Indiana. The offering price was $5,000,000 with the broker's commission to be paid by the vendor. In June 1956 Standolind requested O'Brien, an officer of the Chase Manhattan Bank in charge of the pension trust fund investments for Standard Oil, to consider the royalty for its portfolio. After examination by its petroleum department, the Bank rejected the offer because it concluded that the interest was worth only about $4,000,000.

Thereafter, on October 16, 1956 in Houston, Maybeck, an investment officer for the Bank, not knowing of the previous consideration of the Dora Roberts Ranch, told Murray Presser, president of the plaintiff company, that the Bank was interested in purchasing oil royalties suitable for pension trust accounts. The following day Presser telephoned Maybeck, informed him that he had located through one Petkas a royalty which might fit the Bank's needs, and arranged for a meeting to discuss the property. That afternoon Presser, Petkas, Maybeck and Waters, the owner of the royalty, met in the latter's office and Waters offered the royalty at a price of $5,000,000 with the commission, if any, to be paid by the buyer. Maybeck, unaware that only a few months earlier the Bank had rejected the same royalty, agreed to communicate the offer to the Bank. At this meeting and upon several other occasions the same day Presser mentioned the question of a commission to Maybeck, who stated that he had no authority to enter into any agreement and would have to take the matter up with the Bank officials.

The next day, October 18, Maybeck telephoned Hill, an officer in the Bank's

petroleum department, and relayed the offer to him. Hill, also without knowledge of the prior submittal of the royalty, suggested that Maybeck request Waters to send the Bank the Devonian report, a recently prepared geological study of the property's oil formations. After speaking to Waters, Maybeck called Presser to inform him that Waters was forwarding the Devonian report to the Bank. Presser asked if Maybeck had discussed the question of his commission with Hill, and according to Presser's testimony, Maybeck said "That's okay." Immediately after this conversation Maybeck wrote a letter to his superior at the Bank. In the letter, introduced into evidence by the plaintiff, Maybeck stated: "I also told the broker * * * that the 1½% commission was subject to consideration and approval by the [Investment] Committee and that I could make no commitment in this connection." Later the same day Maybeck learned through a phone conversation with a petroleum department engineer that the Bank had theretofore considered and rejected the royalty, but Maybeck did not convey this information to Presser.

On October 19, Presser wrote to the Bank:

> "We are pleased to submit for your consideration and approval the ⅟₁₆th royalty interest under the Dora Roberts ranch, at a price of $5,000,000, plus a commission of 1½% on the sales price, payable by Chase Manhattan Bank to Presser Royalty Company."

Not having heard from the Bank, Presser telephoned Hill on October 31. The latter told him that the Bank had decided to reject the royalty because it was overpriced by about $1,000,000. Presser testified that he asked Hill if there was anything he might do and Hill said that Presser should try to get the price down. The same day Maybeck wrote to Waters and Presser and stated that the offering price was too high and that therefore the Bank was not interested in acquiring the royalty. No mention was made either by Hill or Maybeck of the prior submittal of the royalty. Soon thereafter the geological study sent by Waters was returned to him, though the Bank kept a photostatic copy in its files. Presser admitted that he never spoke with Waters about reducing the price and made no effort of any kind to obtain a reduction.

About three months later, in January 1957, Standolind requested the Bank to reconsider the royalty. Apparently, the request was the result of a new and lower offer made to Standolind by Humphrey. In March Humphrey told Waters that he thought a price of $4,250,000 would be acceptable to Standolind and the Bank. At the end of March the Bank agreed to this price with Humphrey's commission to be paid by Waters. As finally concluded the transaction involved a "mineral interest," admittedly having slightly greater rights than the "royalty interest" offered through Presser.

 In this diversity action brought in the Southern District of New York and involving only issues of state law the question whether the evidence was sufficient to take the case to the jury is probably to be determined by New York law. Pierce Consulting Engineering Co. v. City of Burlington, Vt., 2 Cir., 1955, 221 F.2d 607, 610; Rowe v. Pennsylvania Greyhound Lines, Inc., 2 Cir., 231 F.2d 922, 924, certiorari denied 1956, 351 U.S. 984, 76 S.Ct. 1052, 100 L.Ed. 1498. But see Metropolitan Coal Co. v. Johnson, 1 Cir., 1959, 265 F.2d 173, 182 (dissenting opinion). Under the New York decisions, as would also be true were federal standards applied, an issue ought not to be submitted unless there is evidence "that ought reasonably to satisfy a jury that the fact sought to be proved is established." Matter of Case, 1915, 214 N.Y. 199, 108 N.E. 408, 410. A mere scintilla of evidence is not sufficient. Baxter v. Baxter, 1957, 11 Misc. 2d 69, 169 N.Y.S.2d 871. The evidence must be viewed in the light most favorable to the plaintiff, but we may not ignore "uncontradicted, unimpeached evidence supporting defendant's position."

Brunner v. Minneapolis, St. P. & S. St. M. R. R., 7 Cir., 1957, 240 F.2d 608, 609. Particularly is this true when this uncontradicted evidence is submitted by plaintiff himself.

■ We are of the opinion that the evidence was insufficient to support the plaintiff's claims. Plaintiff's first assertion of a brokerage contract under which the Bank agreed to pay a commission, if at any time and on any terms the sale were consummated, is supported solely by Presser's statement near the close of lengthy direct and cross-examination that it was his intention to enter into such an arrangement. But Presser's conversations with Maybeck and correspondence with the Bank, rather than his unvoiced intentions, must form the foundation of any contract between the parties. Presser's testimony about these conversations contains not the slightest suggestion that the contract was to be other than one to pay a commission if the plaintiff were the procuring cause of the sale. Nor does Presser's letter of October 19 contain any reference to the sort of contract claimed by him. Furthermore, the testimony of Maybeck and other officers of the Bank, tends to refute the existence of any contract at all, and lends no support to plaintiff's position.

Next, plaintiff contends that the Bank's letter of October 31 terminated a contract between the parties in bad faith. To support this contention plaintiff points to several facts: that the Bank at no time informed Presser that it had earlier negotiated for the purchase of the property through another individual; that defendant made a copy of the geological report obtained from Waters and kept it in the Bank files; and that defendant in fact resumed consideration of the purchase and consummated the transaction. Taken alone these facts might be susceptible to the inference which plaintiff wishes to draw from them. But these facts must be considered in the light of other uncontroverted evidence favorable to defendant. Most significantly this other evidence shows that the transaction was ultimately consummated through a new offer made by the seller and transmitted through the seller's agent Humphrey to the defendant; that this new offer was very nearly in line with the price defendant had much earlier said it regarded as a fair one; that the final deal covered a somewhat greater interest in land than the prior offers; that Humphrey had originally brought the land to the defendant's attention; that almost five months elapsed between the time the Bank ceased corresponding with the plaintiff and the time the purchase was made, during which the price of oil had increased from $2.77 to $3.02 per barrel; and that in rejecting the plaintiff's terms the Bank suggested that if a lower price could be arranged, it might well be interested. All these facts considered together do not permit an inference that the defendant acted in bad faith. See Commercial Standard Insurance Co. v. Feaster, 10 Cir., 1958, 259 F.2d 210. The authorities cited by plaintiff to the contrary, including West v. Kirby Lumber Co., Tex.Civ.App.1917, 193 S.W. 172 are not in point.

■ Finally, plaintiff asserts that in any event it is entitled to recover in *quantum meruit*. Conceding, *arguendo*, that this is so, the plaintiff has made no showing that he conferred any benefit upon the defendant. The plaintiff was not the procuring cause of the sale, and Presser's own testimony established that he never contacted Waters about a price reduction after the Bank's rejection of the $5,000,000 offer. Nor can it be said that plaintiff first brought the land to defendant's attention. Even as to the forwarding of the Devonian study to the Bank, the evidence showed that the report was gathered together and forwarded by Waters and not by Presser. It was paid for by Waters and Presser did not even know what was in it. In any event, there was no showing that the report was useful to the defendant or that it influenced the Bank's judgment concerning the royalty or its value. We therefore conclude that plaintiff did not

make out a case for the jury on this claim.

As we affirm the dismissal because we conclude that the plaintiff failed to make out a case, we need not consider the affirmative defenses raised by the defendant.

Affirmed.